## BOARD OF EDUCATION OF GLYNN COUNTY *v.* DAY.

1. Where no brief of the evidence has been filed, but the evidence is brought to this court in the bill of exceptions, and no additional evidence is sent up in the manner provided by the statute, the bill of exceptions can not be changed or corrected in substantial particulars and evidence added by agreement of counsel in this court.
2. Under a power in a will authorizing executors to sell land at private sale, where two executors qualify both must join in a deed made under the power.
3. That one of the executors had moved from the county of the administration to another county of this State, and had ceased to actively participate in the administration of the estate, but had neither resigned nor been removed, would not alter the rule.
4. Two executors, having a power of sale under a will, conveyed land of the testator, received a part of the purchase-money, and took a mortgage for the balance, which was foreclosed, and the land sold under the execution and bid in and conveyed to one of the executors (the other having moved out of the county and ceased to actively participate in the management of the estate). The executor so taking a

conveyance afterward alone conveyed to a third person. The executor's returns thereafter showed a cash receipt as final payment from the original purchaser. The widow of the testator, for herself and as guardian ad litem of her children, brought suit against the executor for an accounting, referring in the petition to returns of the executor. Subsequently a litigation arose between one claiming title under the person to whom the executor conveyed, and the widow, in regard to the land. *Held*, that it was error to reject from evidence the deed made by the executor, and also certain testimony to show, that the mortgagor agreed with the executor to let the property go to sale under the execution, for the executor to bid it in and allow a reasonable time for the mortgagor to redeem, and, upon his doing so, that the title should be conveyed to him or as he directed; and that this was carried out, the redemption was made, and the conveyance to the third person was in consummation thereof.

5. If an executor had not authority to convey land, but did so and received the proceeds, and a devisee, with knowledge or notice of the substantial facts, brought suit against the executor to recover the proceeds, this amounted to an election to confirm and ratify the conveyance.

6. The doctrine of election between inconsistent remedies discussed.

7. The record of the suit and judgment claimed to operate as res adjudicata in this case is so briefly referred to in the bill of exceptions that it is impracticable to determine whether it had that effect or not; and the question is left open.

8. Where suit is brought to recover an entire tract of land, or claiming the fee-simple in land, and the evidence shows that the plaintiff is entitled to recover less land, or a less interest than that sued for, a nonsuit should not be granted.

9. But where one claiming to be the sole owner in fee of land brings an equitable petition against another, alleged to be a mere trespasser, not to recover the land, but to enjoin the defendant from trespassing thereon or interfering therewith, if the evidence shows that the defendant is not a trespasser, but a tenant in common with the plaintiff, and as such entitled to possession along with the plaintiff, the rule stated in the preceding note does not apply. Trespass by one having no title is not the same as an entry by a cotenant, even if accompanied by wrongful conduct.

Argued February 19,—Decided April 13, 1907.

Equitable petition.    Before Judge Parker.    Glynn superior court.    June 5, 1906.

The Board of Education of Glynn County filed an equitable petition against Mrs. Elizabeth B. Day, claiming to be the owner of certain land on which was situated a school building; that the defendant was wrongfully interfering with the legitimate use of the property for school purposes, and by threats and menaces and other unlawful means was seeking to obtain possession and to in-

terfere with the possession of the plaintiff.' Injunction, general relief, and process were prayed. The defendant denied the ownership claimed by the plaintiff, or that she was guilty of any unlawful conduct, alleged that she had held lawful possession of the property; that the plaintiff in building on it was a mere trespasser, and that pending her temporary absence the plaintiff unlawfully obtained possession and held it for a time.

The evidence introduced by the plaintiff on the trial showed, in brief, as follows: Both parties claimed under Charles Day, deceased. He left a will, which was duly probated, whereby he devised to his son, Henry C. Day, and his daughter, Mary Day Lanier, all of his property, in the proportion of two thirds to Mary Day Lanier, and one third to Henry C. Day. The plaintiff showed title to the two thirds interest of Mary Day Lanier. As to the other one third interest the following appeared: Henry C. Day executed a will, which was probated after his death. In it he appointed three executors, Colville, Hall, and Reed, "or any two of them, if either one failed to qualify, or, in the event of death or two failing to qualify, then the surviving one or the one that does qualify shall act with the full powers bestowed on all three. And I hereby authorize them to sell any or all of the property at public or private sale, with or without advertising." Colville and Reed qualified as executors. Afterwards Colville moved to another county. He took no further part in managing the estate, and Reed alone continued to act. Before this time the two executors had sold to one O'Shaughnessy an undivided one third interest in the Day land, making a deed to him and taking from him a mortgage to secure the unpaid portion of the purchase-money. This mortgage was foreclosed and an execution issued in 1892 and levied in 1893. In 1895 the property was sold by the sheriff and a deed made to "Reed, executor of Henry C. Day," for the expressed consideration of $2,150, though in fact only the costs were paid and the remainder was credited on the fi. fa. In July, 1895, Reed, as executor of the estate of Henry C. Day, made a deed conveying the same property or interest to one Rose for a named consideration of $4,589.11. This deed recited the death of Day, the appointment of the executors, the power of sale contained in the will, the conveyance by them to O'Shaughnessy, the foreclosure of the mortgage, the sale and purchase by Reed "as executor," and

that the powers and duties of the executorship were cast upon Reed, who was the sole grantee, as executor, in the sheriff's deed. When offered in evidence this deed was objected to on the ground that it was necessary for Colville, the other executor, to join in it· in order to make a valid conveyance. The plaintiff offered to show, that Reed, as executor, was pressing for money upon the mortgage; that some payments were made on the debt, and an understanding was reached by which the property should be sold under the mortgage execution, bid in by the executor, and O'Shaughnessy should be allowed a reasonable time to redeem it; that certain creditors of O'Shaughnessy agreed to provide the money necessary to redeem the property from Reed, executor, and the title was to be made not directly to O'Shaughnessy but to one Rose; and that the full- amount due was paid to Reed as executor. The plaintiff claimed by conveyance under Rose. The court excluded the deed from Reed, as executor, and the parol evidence above stated, offered in connection therewith. Certain other evidence was introduced for the purpose of showing that there had been previous litigation under which Mrs. Day and one Johns were enjoined from interfering with the timber upon ·the land described in the petition, at the suit of a predecessor in title of the plaintiff, and persons claiming timber rights under it. Also a certain equitable proceeding which had been brought by Mrs. Day for herself and her children against Reed, as executor, for an accounting, referring to his returns as executor and testamentary guardian; which proceeding was afterwards dismissed for want of prosecution. The returns of Reed, executor, were introduced, in which was an item showing "final payment by J. F. O'Shaughnessy $3,464.02," dated after the sheriff's sale and the day before the deed from Reed, executor, to Rose. Upon the close of the evidence for the plaintiff, the court granted a nonsuit, reciting in the order that the plaintiff "having established title to an undivided two thirds interest in the property in dispute, and the entire ownership of the buildings in dispute, and having claimed title to the entire property, and having proved title to two thirds only," the nonsuit was granted, the temporary injunction previously granted revoked, and permanent injunction refused. Plaintiff excepted.

*Kay, Bennet & Conyers, J. T. Colson,* and *John M. Graham,* for plaintiff in error. *Raiford Falligant,* contra.

LUMPKIN, J.   (After stating the foregoing facts.)

1. A motion was made to amend the bill of exceptions. A written agreement of counsel set out that it was erroneous in six particulars. Most of them had reference to dates and names. It was also recited that certain evidence had inadvertently been omitted from the bill of exceptions. Counsel proposed that it should be amended accordingly. We can not, however, permit this to be done. Whether a mere clerical verbal error may be waived or admitted need not be decided. But material alterations in the bill of exceptions and the insertion of additional evidence, not certified to by the presiding judge and practically contradicted by his certificate that the bill of exceptions is true, and contains all the evidence material to a clear understanding of the errors complained of, can not be made by agreement of counsel in this court. If a defendant in error desires to have additional record sent up, he may, within twenty days after the bill of exceptions is served, petition the judge for an order to have this done. Civil Code, §5536. In any case where no brief of evidence is made and filed as part of the record, if from the main or cross-bill of exceptions there is omitted any material evidence, and the judge trying the case has inadvertently certified the bill of exceptions, within twenty days from the date of service he may, on his own motion, make a supplemental certificate of the evidence so omitted. Acts 1905, p. 84. The bill of exceptions may be amended and corrected from the record, by correcting any imperfection or omission of necessary and proper allegations. Civil Code, §5570. But there is no provision of law for counsel to agree that the bill of exceptions is wrong or lacking in material particulars, and to amend it, not by the record, but by the agreement. Such a practice might result in substantially having one bill of exceptions which the presiding judge certifies to be true and to present the case as it appeared before him, and quite a different bill of exceptions considered by this court. The motion is denied.

In *Jinks* v. *State,* 115 *Ga.* 243, although the bill of exceptions recited that the motion for a new trial was heard and determined during the continuance of a term, an agreement of counsel that the term of court had adjourned was considered by this court. The matter of adjournment of the superior court was one of record. The clerk of the superior court could have been required to certify

to this court when the adjournment was shown by the record to have taken place, and such certificate would have prevailed over a mere recital in the bill of exceptions on the subject. The agreement of counsel, therefore, amounted in substance to supplying this matter of record. In the present case there is no record of the evidence, but it is sought by mere agreement to insert in the bill of exceptions some additional evidence which is not there. *Jones v. State,* 127 *Ga.* 281.

2-6. Two executors were qualified under the will. It conferred power upon them to sell and convey land at public or private sale. They sold land of the testator (or rather an undivided interest in land), and both made to the purchaser a deed, receiving a part of the purchase-price in cash and taking a mortgage on the land sold, for the balance. The mortgage was foreclosed and an execution was issued and levied. One of the executors moved to another portion of the State and ceased to act in connection with the other executor. The other bid in the land and took title to it. He afterwards made a conveyance to another person, under whom the plaintiff claims. It was sought to show that he did this by agreement with the mortgagor to bid in the land, allow him a reasonable time to redeem it, and, upon redemption, to make a conveyance to him or his order or assigns; that the mortgagor procured the money, paid the amount in full, and by his direction the deed was made to a third person. The court held that the deed must be signed by both executors, and refused to admit this evidence. Where two executors qualified, each was authorized to discharge the usual functions of an executor, but it was necessary for both to join in executing special trusts. Civil Code, §3317. To which limitation has since then added, by the act of 1900, "or in making contracts binding upon the estate, or in paying out funds belonging to the estate." Acts 1900, p. 51. This transaction was before 1900, and hence that act does not apply. Making a private sale of real estate and executing a deed thereto required a concurrence of both, in order to make the deed valid as a conveyance. *Hosch Lumber Co.* v. *Weeks,* 123 *Ga.* 336. Nor would this be changed by the removal of one executor to another county and ceasing to take active interest in the estate, but neither resigning nor being removed. He would still be an executor, though inactive. Here both executors had already conveyed the title of the testator. One

bid in the property, and took the title in his name alone. If nothing more appeared, we incline to think that the land would be considered as thus returning to the estate. But evidence was offered to prove that such was not the case, and that this was a mere mode of collecting the amount due the estate, and was done under an agreement by which the debtor allowed the land to be bid in by the executor and held until he redeemed it within a reasonable time. If such an agreement were made between an individual owner of a mortgage fi. fa. and the mortgagor, it has been frequently held that it would be valid and enforceable, although made by parol. Freeman on Executions (3d ed.), §337; 3 Pomeroy's Eq. Jur. (3d ed.) 2036-2039, §1055, note 1; 2 Jones on Mortgages (6th ed.) §1047 a; 2 Devlin on Deeds (2d ed.), §429; 2 Pingrey on Mortgages (2d ed.), §§2140, 2148, 2150; *Cameron* v. *Ward,* 8 *Ga.* 245; *Rives* v. *Lawrence,* 41 *Ga.* 283; *Burnett* v. *Vandiver,* 56 *Ga.* 302; *Mathews* v. *Starr,* 68 *Ga.* 521; *Moye* v. *Clarke,* 69 *Ga.* 750; *Horne* v. *Mullis,* 119 *Ga.* 536 (distinguishing the case of *Roughton* v. *Rawlings,* 88 *Ga.* 819). If such an agreement was made with the executor, the devisees might perhaps have repudiated it, on the ground that he had no authority to bind the estate by such a contract. But they could not, after the redemption and conveyance, with knowledge of the facts, claim the proceeds of the contract and repudiate that part of it which was disadvantageous.

In *Arrowood* v. *McKee,* 119 *Ga.* 623, it was held that where a security deed was made to "H. L. M., guardian of F. M. P.," as between the grantor and grantee, this had the effect to put the title in the latter individually, and where a reconveyance for the purpose of levy and sale was executed by "H. L. M., guardian of F. M. P.," this put the title in the defendant as completely as it had been prior to the execution of the security deed. See also *Greenfield* v. *Stout,* 122 *Ga.* 303. In the present case the bill of exceptions recites that the sheriff's deed was made to "H. W. Reed, executor of Henry C. Day." Doubtless, if the technical legal title was in the executor, it was impressed with an equity in favor of the estate. But if the sale was made merely as a mode of securing payment to the estate by the mortgagor, and such payment was made, and the executor thereupon executed a conveyance in accordance with the agreement, a devisee could not claim both the money and the land.

If it should appear that the conveyance was thus made and was in law ratified, it would be good.

Was there sufficient evidence of ratification on the part of the defendant of the conveyance by the executor, when considered in connection with the rejected evidence, to have prevented a nonsuit and authorized a submission of the case to the jury? In *Lamar* v. *Pearre,* 90 *Ga.* 377, a trustee for a life-estate only sold and conveyed the fee. After the death of the life-tenant the remaindermen brought suit against the purchaser to assert their title in remainder and recover the premises. Pending this suit they filed a bill against a purchaser from the tenant for life, in which they claimed other property as being the proceeds of the sale by the trustee of some or all the original trust property. It was held that, as the remaindermen first proceeded to treat the sale of their remainder estate by the trustee as void, that litigation was not destroyed by the subsequent filing of a suit to trace the proceeds. In the opinion Mr. Justice Lumpkin said that the second suit was inconsistent with the first, because the plaintiffs could not recover on the bill to trace the proceeds, unless they either recognized as legal the sale of the fee, or else ratified it. It was intimated that a ratification would be final, but that possibly one might repudiate and still have the power afterwards to abandon the repudiation and ratify. The case of VanWinkle v. Crowell, 146 U. S. 42, was cited approvingly; and it was strongly indicated that, had the proceedings to trace the proceeds of the sale been first brought, the question would have been altogether different. In the VanWinkle case thus cited, it was held that a proceeding to assert a lien on property was inconsistent with the existence in the plaintiff of a title thereto, and treated the sale of the property as unconditional.

The doctrine of inconsistent remedies has been urged. Strictly speaking the defendant is not proceeding to seek a remedy inconsistent with a former proceeding, but is simply defending against an effort to enjoin her. The question here involved may be more accurately stated to be one of ratification by her of the conveyance by the executor by having sued him for the proceeds or a part thereof. That ratification may arise from bringing a suit or action to enforce rights, or instituting other legal process, based upon unauthorized acts, has been frequently held. As to ratification by a

principal of unauthorized acts of an agent in this manner, see 1 Clark & Skyles on Agency, p. 355, §142, p. 367, §147. And it may arise by bringing suit against the vendee or the agent for the price of property sold by the agent without authority. Id. 357; *Dolvin* v. *American Harrow Co.,* 125 Ga. 699, 707-708 and cases cited. The doctrine of election between inconsistent remedies or remedial rights is so nearly in point, however, that a consideration of it is proper.

Let it be remembered at the outset that there is a difference between consistent remedies and those which are inconsistent. "A plaintiff may pursue any number of consistent concurrent remedies against different persons until he obtains satisfaction from some of them." Civil Code, §4945. He can not prosecute two actions in the courts of this State at the same time for the same cause and against the same party. Civil Code, §3737. There is no inconsistency between different legal remedial rights, all of which are based upon a claim of title to property in the plaintiff, or all of which are based upon the affirmance of title in the defendant. But actions which proceed upon the theory that the title to property remains in the plaintiff are inconsistent with those which proceed upon the theory that title has passed to the defendant. It has been declared that, "Any decisive action of a party, with knowledge of his rights and of the facts, determines his election, in case of conflicting and inconsistent remedies." 15 Cyc. 259. As to what is a decisive act which constitutes a conclusive election, barring the subsequent prosecution of inconsistent remedies, the authorities are not entirely agreed. It is quite clear that the prosecution of one remedial right to judgment or decree, whether such judgment or decree is for or against the plaintiff, will amount to such an act. "By preponderance of authority, the mere commencement of any proceeding to enforce one remedial right, in a court having jurisdiction to entertain the same, is such a decisive act as constitutes a conclusive election, barring the subsequent prosecution of inconsistent remedial rights. But in some of the States it is held that the mere commencement of a proceeding is not such a conclusive election as will prevent plaintiff from obtaining a dismissal thereof, and from instituting another proceeding to enforce an inconsistent remedial right. And in other States the second proceeding may be maintained, although the first is still pending."

15 Cyc. 259-260. In 7 Encyc. Pl. & Pr. 362, 364, 368, it is said that, subject to certain specified exceptions, "the first pronounced act of election is final and imperative;" and numerous cases are cited in the notes in support of the position.

The view of a majority of the courts is thus clearly stated by the Court of Appeals of New York: "Whether or not there has been an election of remedies is determined by the commencement, not by the result of the action." In re Garver, 176 N. Y. 386. See also Conrow v. Little, 115 N. Y. 387; VanWinkle v. Crowell, 146 U. S. 42, 50-51; Lehman v. VanWinkle (Ala.), 8 Southern, 870; Clausen v. Head, 110 Wis. 405 (84 Am. St. 933); Daniels v. Smith, 15 Ill. App. 339; Thompson v. Howard, 31 Mich. 309; Nield v. Burton, 49 Mich. 53; Thomas v. Watt, 104 Mich. 201; Ludington v. Patton, 3 Wis. 208 (17); Theusen v. Bryan, 113 Iowa, 496; O'Donald v. Constant, 82 Ind. 212; Benson v. Liggett, 78 Ind. 452; Lowenstein v. Glass, 48 La. Ann. 1422; Hanner v. Summerhill, 6 Tex. Civ. App. 764 (72 Tex. 229). A contrary view has been expressed by the Supreme Court of Minnesota. Spurr v. Home Ins. Co., 40 Minn. 424, 425. In Bitzer v. Bobo, 39 Minn. 18, in the headnote, it was stated that, after withdrawal or discontinuance of the first suit before any action had been taken upon it, the plaintiff was not "thereby debarred from seeking a different remedy, based upon a ground not inconsistent with that before taken." Of course, if there was no inconsistency, there would be no case for election between inconsistent remedial rights. The opinion is somewhat broader than the headnote, but it mentions facts such as that it did not appear that the filing of the first claim was in any sense the act of the plaintiff who sued later, or that she knew the facts afterwards set up, and finally says, "A party is not thus barred from pursuing a different remedy in a second action or proceeding, if by doing so he does not take a position inconsistent with that before taken, and if at least nothing has been done upon the former demand to the prejudice of the adverse party." See Hammond v. Abbott, 166 Mass. 518; Peters v. Ballister, 3 Pick. 495; Hargadine-McKittrick Dry Goods Co. v. Warden, 151 Mo. 578, 585; Cohoon v. Fisher, 146 Ind. 583.

Some of the cases which adhere to this latter view deal with the question as if it were one of estoppel in pais between parties to a transaction, and treat the bringing of the first suit as if it were

only a representation or admission, and seem to think that there must be a superadded element of change in condition, or action in reliance on it, to prevent the plaintiff from dismissing his suit and asserting an inconsistent remedial right. To us this appears to be too restricted a view. Unquestionably a person may estop himself in this as in other matters by misleading another to his injury or causing such other to change his situation. But the doctrine of election of inconsistent remedies or inconsistent remedial rights rests on a broader basis. Where one is in a situation in which he may elect between two inconsistent proceedings, the choice of the position which he will take must be made before bringing suit, or in doing so. He has no right to bring either action except by selecting and determining to occupy a position consistent with that action and inconsistent with the other. If, with actual knowledge or notice of the substantial facts, he chooses the position which he will occupy, and which will authorize him to appeal to the courts for one of the remedies, and does in fact proceed in court to enforce such remedy, it would seem to be little short of trifling with judicial procedure to allow him at his mere option to change his mind, dismiss his suit, repudiate the position which he has thus solemnly taken, assume another directly inconsistent with it, and ask the courts to enforce a remedy based on his new election. If he may change his mind once after having assumed and thus declared his position and based his suit upon it, why may he not do so again? And where is the limitation upon decision and re-decision, selection and re-selection, and vacillation between inconsistent positions and remedies, as it may appear to the litigant from time to time that his chances are better in one direction or the other? Can he be allowed to swim hither and thither in a sea of legal uncertainty until he has been transfixed by the harpoon of a final judgment? To illustrate: An administrator or an agent, without due authority, sells property and takes notes therefor or receives cash. The persons interested may elect to affirm or repudiate the transaction. They can not do both. It would hardly be held that they could elect to confirm the sale, sue the administrator or agent for the proceeds, then dismiss the suit, elect to repudiate the sale, sue for the property, and alternate between the two positions as often as they should see fit until judgment should be rendered, or until one or the other selection should

be acted on so as to create an estoppel, on the same basis as it would arise from a mere verbal statement as to an existing fact, or silence where good faith required speech.

In *Wright* v. *Zeigler,* 70 *Ga.* 502, it was said that "A creditor can not both assail and claim under an assignment, and he must elect before beginning proceedings." In some of the cases in this State the plaintiff electing had actually obtained a judgment or decree. But this was not held to be an essential in order to make the election final. *Equitable Life Assurance Society* v. *May,* 82 *Ga.* 646; *Ingraham* v. *Barber,* 72 *Ga.* 158; *Smith* v. *Estey Organ Co.,* 100 *Ga.* 628; *Pearce* v. *Borg Chewing-Gum Co.,* 111 *Ga.* 847. In *Davis* v. *Collier,* 13 *Ga.* 485, it was contended that a landlord, who had by agreement an equitable lien upon a crop, estopped himself from asserting it, by first taking out a distress warrant, having it levied, and then dismissing it. The point was raised by another creditor. It was held that "the claim by the distress warrant was not in principle, though in form, 'of contrary tenor' to the equitable claim set up in the bill. It was only a different remedy by which the plaintiff in error supposed he could obtain satisfaction for his rent." It was not, therefore, a case of inconsistent remedies and an election of one of them; and as to the plea of estoppel, under the facts of the case, there was no estoppel in pais.

It has been said that to the general rule as to the conclusiveness of an election there are certain exceptions; though in respect to them there is some conflict among the adjudications. Some of these suggested exceptions are, where the first suit is brought in a court which does not possess or acquire jurisdiction; or if the action is commenced before the cause of action has accrued, and is defeated for that reason; or if the suitor has, in his first action, mistaken his remedy and adopted a mode of redress incompatible with the facts of his case (though this does not mean merely if he is defeated in his first action) ; or if he acts in ignorance of substantial facts a knowledge of which is essential to an intelligent choice of procedure, and, when notice of them is acquired, acts with reasonable promptness. 7 Encyc. Pl. & Pr. 365, 366 and notes. We need not discuss these alleged exceptions.

In the present case the sheriff's sale took place in March, 1895. Reed, as executor, made a return on July 6, 1896, in which appeared, under date of July 15, 1895, an entry of "final payment"

by O'Shaughnessy, amounting to $3,464.02. His deed to Rose was dated July 16, 1895. In May, 1898, Mrs. Day, for herself and as guardian ad litem of her children under appointment of the court, filed an equitable proceeding to compel an accounting from the executors, and especially from Reed, who was executor and testamentary guardian. In it appears evidence of examination of the executor's returns, and a complaint that returns had not been made for certain years, and a statement that the returns of Reed as guardian for the children showed a certain sum of money in his hands, which was alleged to be an asset of the estate, and which it was contended should be refunded to be properly distributed. It was also alleged that the estate had never been fully administered, and that the lands in Echols and Dade counties, and various sums of money, profits on sales, and other assets had not been completely administered. This omitted any reference to the land now in controversy, which is in Glynn county, as unadministered. An accounting and judgment for the balance due was prayed. Service was perfected on Reed, and in 1901 the proceeding was dismissed for want of prosecution. There is evidence here to indicate notice or knowledge on the part of Mrs. Day when she brought this action for an accounting which included the proceeds of this conveyance. If it be not conclusive as an election or ratification, it would certainly amount to an admission for the consideration of the jury. *Lamar* v. *Pearre,* 90 *Ga.* 385, supra. It was therefore error to reject the evidence offered, and to grant a nonsuit.

From the brief outline of the pleadings in the equitable proceeding contained in the bill of exceptions, we find it difficult to say whether there is such a showing of knowledge or notice on the part of Mrs. Day as to conclude her on the face of the record; or whether it is only prima facie enough to admit the evidence, leaving the jury, under all the evidence, to say whether or not she knew or was charged with notice, and sued to recover the proceeds, and thus ratified the conveyance by the executor. As at present advised, the latter view appears to be the correct one. But all that we now hold is that the rejected evidence should have been admitted, and that, coupled with the record, there was enough to prevent a nonsuit.

7. A record of a former suit, in which an injunction was granted in favor of a predecessor in title of the present plaintiff

and persons claiming timber rights under it, against Mrs. Day and others, was introduced in evidence, and it was contended that this operated as an adjudication of the point now involved. The former suit was in respect to certain timber rights on the land. The pleadings of the plaintiff are very briefly summarized in the bill of exceptions, and those of the defendants are not mentioned at all. The issues involved and passed upon do not clearly appear, and, from what is before us, we should hesitate to rule that it is res adjudicata. We leave this open.

8, 9. It is urged that, where suit is brought for a tract of land or the entire fee therein, and the evidence shows that the plaintiff is entitled to recover some of what is sued for, though a less amount or an interest less than the entire fee, a nonsuit should not be granted. This is true where the suit is to recover land. *Vaughn* v. *Burton,* 113 *Ga.* 106. But the present action is not to recover land. It seeks an injunction to prevent interference with real estate. If an equitable action were brought against one as a mere trespasser, to enjoin interference with the possession of land, alleging insolvency of the defendant, and it should appear that the defendant was not a trespasser, but was in 'fact a tenant in common with the plaintiff, the rule above stated would not apply.

*Judgment reversed. Fish, C. J., absent. The other Justices concur.*