30064. SOUTHERN AUTO COMPANY *v.* FLETCHER.

DECIDED NOVEMBER 20, 1943. REHEARING DENIED DECEMBER 9, 1943.

*Briggs Carson Jr.,* for plaintiff in error.
*Robert R. Forrester, C. A. Christian,* contra.

PER CURIAM. Vallie Fletcher brought a bail-trover action against Southern Auto Company to recover a described Plymouth automobile. The defendant denied all allegations of the petition. The jury returned a verdict for the plaintiff. The defendant's motion for new trial was overruled, and in *Southern Auto Company* v. *Fletcher,* 66 *Ga. App.* 168 (17 S. E. 2d, 294), this court reversed the judgment. It appeared from the evidence, as shown in the report of the case, that the plaintiff purchased from the defendant a Packard automobile which she claimed the defendant had represented to her as a 1937 model, in part payment for which she delivered to the defendant a 1937 Plymouth automobile, the subject-matter of the present action; that she complained in a few days that the car was using too much oil, and that a compromise was effected by her being allowed a reduction of approximately $96 in the purchase price, the first contract being canceled and a new one entered into. She contended that when she signed the second note and contract for the unpaid balance of the purchase price, the car

was represented by the seller to be a 1937 Packard, and that shortly after acquiring it she discovered that it was a 1936 Packard and tendered the same back to the defendant, demanding the return of the Plymouth car, and that this demand was not complied with. In this court it was ruled: "Where one who can sign her name purchases an automobile under a written contract which described it as a 1936 model, she can not rescind the contract on the ground that it was orally represented to be a 1937 model, when the seller had no reason to know that she could not read, made no representations as to the nature or contents of the contract, and there was no emergency in connection with the execution of the instrument."

On the second trial of the case the evidence as to the transaction was similar to that set out above. The plaintiff testified as to her education: "I was in the first grade when I quit. I can write my name. . . I know my A B C's. I learned to count to a hundred. Yes, sir, I would say my education consists of writing my name, counting to a hundred, and knowing my A B C's. Yes, sir, I know a figure when I see it. I don't know high figures but I know some figures. Well, I know figures in combinations up to a hundred—like that. I would know that. I don't know, if a combination of four figures was presented to me, that I could read that. Yes, sir, I know figures in individual units." It is conceded by both sides that the note and contract she signed called for a 1936 model Packard automobile. The plaintiff testified that when she was asked to sign the contract the seller fraudulently represented the car to be a 1937 Packard, and "at the time he made the new notes the representation he made about the car he was describing in the note was a 1937. When he gave me the new note he said about the model that he had the new contract made and ready for me to sign for the 1937 Packard." Her husband testified that the salesman said: "I got your new notes fixed up for your 1937 Packard." The salesman testified that he never represented the car to be a 1937 model, but that he told her it was a 1936 model, saying, "You know this is a 1936? and that she answered, "Yes;" that no guarantee was made, and that he did not represent it to be a 1937 Packard, and that he said, "Here's your new contract, sign it." It further appeared from the evidence that the plaintiff, in a day or two after signing the new contract, sought to rescind the contract, offering the Packard car to the seller and demanding that

the seller return to her the Plymouth car; that the seller refused to deliver the Plymouth car unless she would pay for certain repairs which it said had been necessary to make. The plaintiff testified that she had not authorized the repairs to be made on the car and that she refused to pay for the same. Thereafter the present action was brought.

■ In this court the plaintiff in error filed a written motion to amend the brief of evidence, reciting that the second contract between the parties had been lost, but that it had been agreed between them that the first contract, which was introduced in evidence, was identical with the second except as to the amount of the deferred payment, which agreement was said to be of record in the trial court; and this court was requested to direct that the clerk of the trial court send to this court the said contract, or a brief of the warranty clause therein, and the alleged agreement between the parties, and that the brief of evidence be thereby amended. In dealing with a request to amend a brief of evidence appearing in the record before this court, it was said in *National Life & Accident Insurance Co.* v. *Carter,* 46 *Ga. App.* 1, 3 (166 S. E. 247): "When the judge of the superior court approved the brief of the evidence and signed and certified the bill of exceptions, he exhausted the power conferred on him by law over the same, and could not, when the case was pending in this court, approve a supplement to the brief of the evidence. *Jones* v. *State,* 64 *Ga.* 697 (2). When a judge certifies a bill of exceptions assigning error on the denial of a new trial, and a brief of the evidence is approved by him, there is no power vested in this court to change the brief of evidence, even though it be made to appear by a certificate of the trial court that the brief is incorrect. The case must be decided here upon the record which reaches the office of the clerk of this court in the manner prescribed by law. *Minhinnett* v. *State,* 106 *Ga.* 141, 142 (32 S. E. 19). The authority of the trial court to deal with the brief of evidence in any way, either by changing it or making endorsements thereon, terminates when he signs the certificate to the bill of exceptions. *Milton* v. *Savannah,* 121 *Ga.* 89 (48 S. E. 684). Counsel can not by agreement add evidence to the brief of evidence approved by the trial judge, while the case is pending in this court. *Board of Education* v. *Day,* 128 *Ga.* 156 (57 S. E. 359). This court can not consider additional evidence

sent up by agreement of counsel for both parties to the case and with the approval of the trial judge. *Adams* v. *State,* 44 *Ga. App.* 573 (162 S. E. 164)." For the reasons above shown, the request to amend the brief of the evidence is denied.

█ It appears conclusively from the evidence that the plaintiff traded for and bought the automobile under the first contract. She has made no complaint as to any fraud inhering in the execution of the first contract, and there is no evidence tending to show that she was induced to buy the automobile, which she bought under the first contract, by any fraudulent representations made by the seller. Assuming for the sake of argument that the evidence was sufficient to show that the second contract was fraudulently induced and therefore void, the elimination of the second contract would place the parties in the position occupied immediately before the execution of the second contract, to wit, their position under the first contract. Since there was no evidence that the first contract was procured by fraud, the plaintiff showed no right to recover, and the court erred in overruling the motion for a new trial.

█ One special ground of the motion for a new trial refers to the contract of purchase having been introduced in evidence and quotes from its provisions, including one as to exclusion of warranties, and it is contended that under the terms of the contract the plaintiff was bound for the purchase price of the 1936 Packard, and because of the waiver of warranties she can not contend that the car was represented to her as a 1937 Packard. This ground can not be considered, even if the plaintiff could be said to be able to read, inasmuch as no copy of the contract appears in the record in this court.

█ The second special ground of the motion for a new trial complains that the court erred in stating to the jury that the court was of the opinion that no question of emergency was involved in the case in connection with the execution of the contract. The evidence demanded a finding that no emergency existed, and neither party contends that any emergency arose. Accordingly, the statement of the court was not harmful error.

█ The court did not err in refusing to give a requested written charge as follows: "If you believe from the preponderance of testimony that the plaintiff's husband was her agent for the reading and writing of her contracts and business matters, was present at

signing of contract, had an opportunity to read same but did not do so, then it will be your duty to find for defendant." There was no evidence whatever that the husband of the plaintiff was her agent for the purpose of reading the contract, or having it read to him on her behalf.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*

SUTTON, J., dissenting. I think the judgment of the trial court should be affirmed, and therefore dissent from the ruling made in division 2 of the above decision, which reverses the judgment of the trial court. The jury was authorized to find from the evidence that at the time the first contract between the parties hereto was made, the salesman of the Southern Auto Company represented to Mrs. Fletcher that the automobile which he was trading to her was a 1937 Packard; that it had a sign pasted on the windshield saying it was a 1937 model Packard; and that the salesman of this automobile company told the lady employee in the office of the company to order a tag (license number) for a 1937 Packard that he was trading to Mrs. Fletcher; that within a day or two after the first trade was made, Mrs. Fletcher brought the car back to the company, complaining that it used too much oil, and after some negotiations the parties by agreement rescinded or canceled the first contract and entered into the second contract, which was in the form of a note and sales contract; and according to the evidence of the plaintiff, the salesman of the automobile company represented to her at that time that the written contract called for a 1937 Packard. The jury was authorized to find from the evidence that the plaintiff was not able to read the contract so as to understand that it called for a 1936 Packard, instead of a 1937 Packard. The second contract is the one here involved and in fact is the only one in existence, as the evidence of both parties shows that the first contract was canceled by agreement of the parties. The first contract was canceled and the sale of the automobile to the plaintiff was consummated by the second contract, and under the evidence, this second contract extinguished the first one. See *Farmers & Merchants Bank* v. *Rogers, 55 Ga. App.* 38 (189 S. E. 274), and cit. While the plaintiff had been in possession of the automobile a few days before the contract in question was entered into, still she did not know the Packard was a 1936 model, and if the seller fraudulently misrepresented the contents of the contract in respect

to the subject-matter of the sale, she would be entitled to a rescission of the contract. In *Grimsley* v. *Singletary,* 133 *Ga.* 56 (65 S. E. 92, 134 Am. St. R. 196), it was ruled: "Where an illiterate person, unable to read, signs a written instrument in ignorance of its character or contents, believing it to be an instrument of a different nature, and is induced to do so by the misrepresentations of the other party, whose good faith he has no ground to reasonably suspect, as to the nature or contents of such writing, he is not bound thereby, although he does not request the opposite party or any one else to read the paper to him before he signs it." The written contract is not in the record before this court, but it is conceded by both parties that it called for a 1936 model Packard, and that the plaintiff received such a model. Whether or not the plaintiff was able to read the contract so as to understand that it specified a 1936 model Packard was a question for the jury. Although she testified that she could read individual units, she stated she did not know that she could read a combination of four figures if presented to her. If she was not able to ascertain from the contract that it specified a 1936 model, and if the evidence also authorized a finding that the seller fraudulently misrepresented the contents of the contract in respect to the subject matter of sale, she would be entitled to rescind, and upon her tendering back the 1936 Packard and her demand for the Plymouth car being refused, she would have the right to maintain the trover action here brought. See *Yeomans* v. *Jones,* 54 *Ga. App.* 330 (188 S. E. 62).

The plaintiff in error contends, however, that no artifice or fraud was practiced upon her in procuring her signature to the contract. This contention can not be upheld if the testimony on her behalf is to be accepted. The jury was authorized to find that the salesman said to her that the contract provided for a 1937 model Packard. His representation was, in my opinion, equivalent to stating to her: "Here is your contract. It calls for delivery to you of a 1937 Packard;" but even if ambiguous the jury would be warranted in so construing his remark. Accordingly, this amounted to a trick or device reasonably calculated to induce her to believe that she was to receive a 1937 Packard, and not a 1936 Packard which in fact the contract called for.

The evidence in behalf of the plaintiff on the second trial as to the misrepresentations made to her by the salesman of the defend-

ant with reference to the model of the car as described in the last contract, distinguishes the case as it now stands from the ruling made in 66 *Ga. App.* 168 (supra), when it was here the first time.

The plaintiff elected to take a money verdict. There was evidence that the reasonable value of the Plymouth car was about $510 at the time of the conversion, less the amount of expense in repairing it, which was shown to be from $60 to $100. The jury returned a verdict for $410, with interest from the date of the conversion, the correctness of the amount of which is not questioned. I think the verdict was authorized, and that the court did not err in overruling the motion for a new trial. I concur in divisions 1, 3, 4, and 5 of this decision, but dissent from the ruling in division 2 thereof.