45090.   HOME INDEMNITY COMPANY v. GODLEY et al.

ARGUED FEBRUARY 4, 1970—DECIDED JULY 13, 1970—
REHEARING DENIED JULY 30, 1970—

*Neely, Freeman & Hawkins, Joe C. Freeman, Jr., Thomas H. Harper, Jr., Falligant, Doremus, Karsman & Maurice, Ogden Doremus,* for appellant.

*Alaimo, Taylor & Bishop, Anthony A. Alaimo, J. B. Hodges, Benjamin R. Martin, Jr.,* for appellees.

PER CURIAM. ■ The insurer is not estopped to deny coverage because it initially began a defense in the first lawsuits which were all voluntarily dismissed by the plaintiffs. *Jones v. Ga. Cas. &c. Co.,* 89 Ga. App. 181 (78 SE2d 861) and *State Farm Mut. Auto. Ins. Co. v. Anderson,* 104 Ga. App. 815 (123 SE2d 191) are inappropriate. In the *Jones* case the insured defended the case until final judgment without any reservation of rights. The *Ander-*

*son* case held for the insurer on the theory that there had been a valid reservation of rights even though the case was defended up to and through the final judgment.

The law on the question is as follows: "An entry of *an appearance* for the insured by the insurer does not of itself constitute a waiver of available defenses, but the insurer is entitled to a reasonable time in which to investigate the facts. And the insurer may withdraw from the defense upon learning of facts which constitute a policy breach, and no waiver or estoppel will arise. But the insurer is required to act seasonably in disclaiming liability and it could not delay its decision so long that the insured's rights were prejudiced thereby." 7A Appleman 527, 529, § 4693. "It seems well established that, if a liability insurer's defense of an action against the insured is to work an estoppel barring the insurer from subsequently raising the defense of non-coverage, or some other defense existing at the time of the accident, it must be shown that prejudice resulted from the insurer's conduct in defending its action against the insured." 38 ALR2d 1157. For a recent case where notice that a policy exclusion was not waived was given before trial, see Stillwell v. Iowa Nat. Mut. Ins. Co., 205 Va. 588 (139 SE2d 72).

The accident occurred on January 16, 1966. Less than thirty days later (February 14th) lawsuits were filed against both Godleys. The Godleys' insurer (Home) and his mother's insurer (Phoenix—which covered the automobile being driven by Godley), both assigned the investigation of the acident to an independent adjuster—Crawford & Company. Both insurers employed the same attorney to represent them—Mr. Ogden Doremus. Less than four months after the accident (June 7, 1966) Home, through its attorney Mr. Doremus, advised Godley that its investigator disclosed that at the time of the occurrence he was driving an automobile owned by his mother, a member of the same household and his relative, and for that reason and others the automobile was not covered under the Home policy. On this same date Mr. Doremus advised the Clerk of the Superior Court of Camden County that his name should be withdrawn as attorney in all cases and that the name of Mr. Wallace E. Harrell should be substituted (attorney for Phoenix). Almost five months thereafter, identical suits

were filed in Florida against the Godleys, and in December, 1966, the Camden County suits were voluntarily dismissed by the plaintiffs.

There is no estoppel by virtue of the fact that Mr. Doremus, as attorney for both Home and Phoenix, entered an appearance for the insured in the Camden County cases. On the basis of the investigations of the facts and the policy provisions of both insurers, Mr. Doremus determined that there was no coverage under the Home policy but that there was coverage by Phoenix. His action in withdrawing himself and Home from the defense and turning the defense over to Mr. Harrell (attorney for Phoenix) did not prejudice the rights of Godley because some time thereafter these suits were voluntarily dismissed by the plaintiffs. The Florida suits were not filed until five months after the time Mr. Doremus withdrew from the case.

■ The evidence is such that reasonable minds may examine it and differ as to its meaning and results. We find the parties admitting that there were three separate insured automobiles, with two separate policies by two separate companies, involving the liability coverage of the petitioner and his widowed mother. There is no question of the mother's liability coverage on her automobile; but we have for determination whether the insurance contract between the insured and the insurer, covers the insured as the driver of his mother's automobile, not his own, which he was driving on the date of the collision. Counsel for appellant argues that the vehicle was not covered as a "non-owned automobile" under the definition in the policy, although, in fact, it was not owned by the driver, since it was the automobile of his mother, a relative, and it was "furnished for the regular use of either the named insured" or his mother, hence the insurer owed no coverage. The testimony does not demand a finding that use by the driver was "regular use" by him, but it was "owned by" and "furnished for the regular use" of his mother. But we now look to other definitions in the policy. Under the definition of "owned automobile" we find that this means coverage of "a temporary substitute automobile" which means "any automobile . . . used with the permission of the owner . . . *as a substitute for the owned automobile . . . when withdrawn from normal use because of its*

*breakdown, repair, servicing, loss or destruction."* (Emphasis supplied.) He had two insured vehicles—one in service, the other with a flat tire or one that was going flat. From his testimony, the jury could have inferred the use of his mother's car was in trade for his own, but the jury could just as easily have found from this testimony that his other vehicle (the pick-up truck), being unserviceable, authorized coverage while driving the automobile not owned by him as a "temporary substitute automobile" for his own. After a verdict, the evidence is construed in its light most favorable to the prevailing party, for every presumption and inference is in favor of the verdict. *Wren v. State,* 57 Ga. App. 641, 644 (196 SE 146); *Southern R. Co. v. Brock,* 132 Ga. 858, 862 (64 SE 1083); *Stapleton v. Amerson,* 96 Ga. App. 471 (5) (100 SE2d 628); *Young Men's Christian Assn. v. Bailey,* 112 Ga. App. 684, 690 (146 SE2d 324). Thus, under the policy, it was an "owned automobile." The facts here are not unlike those found in *Cotton States Mut. Ins. Co. v. Lee,* 119 Ga. App. 293 (166 SE2d 907).

■ Damages for bad faith will not be allowable. It is elementary that, "If the evidence is such that a finding in accordance with the contentions of the defendant would have been authorized, a finding of bad faith is not authorized. *Royal Ins. Co. v. Cohen,* 105 Ga. App. 746, 747 (125 SE2d 709)." *St. Paul Fire &c. Ins. Co. v. Postell,* 113 Ga. App. 862, 863 (149 SE2d 864); *American Cas. Co. v. Seckinger,* 108 Ga. App. 262 (132 SE2d 794); *Lincoln Life Ins. Co. of Ga. v. Anderson,* 109 Ga. App. 238 (3) (136 SE2d 1); *U. S. Fidel. &c. Co. v. Biddy Lumber Co.,* 114 Ga. App. 358, 359 (151 SE2d 466); *U. S. Fire Ins. Co. v. Tuck,* 115 Ga. App. 562, 574 (155 SE2d 431).

In Division 2 it is asserted that "the evidence is such that reasonable minds may examine it and differ as to its meaning and results." If there is any reasonable ground for contesting the claim there is no bad faith and it is error to award penalty and attorney's fees. *Dependable Ins. Co. v. Gibbs,* 218 Ga. 305, 316 (127 SE2d 454); *Belch v. Gulf Life Ins. Co.,* 219 Ga. 823, 828 (136 SE2d 351).

■ One of the errors enumerated is on the failure of the court to charge the difference between a primary policy of insurance and an excess policy of insurance. Whether the insurer be a pri-

mary or excess carrier, its obligation to defend the insured is the same under the contract. *National Surety Corp. v. Dunaway,* 100 Ga. App. 842 (112 SE2d 331); *U. S. Fidel. &c. Co. v. Watson,* 106 Ga. App. 748, 751 (128 SE2d 515). The lower court did not err in failing to charge on excess insurance, which was not relevant or material to this case. *Hartford &c. Ins. Co. v. Cochran Oil Mill &c. Co.,* 26 Ga. App. 288 (105 SE 856); *Continental Cas. Co. v. Owen,* 90 Ga. App. 200 (82 SE2d 742).

■ The provisions of a policy for coverage of a substituted vehicle are for the insured's benefit and are to be construed liberally in favor of the insured if any construction is necessary; and the purpose of a substitution clause is not to narrowly limit or defeat coverage, but is to make the coverage reasonably definite as to the vehicle the insured intended normally to use. See *Samples v. Ga. Mut. Ins. Co.,* 110 Ga. App. 297 (138 SE2d 463); *Cotton States Mut. Ins. Co. v. Lee,* 119 Ga. App. 293 (1) (166 SE2d 907).

But ambiguity is not to be found where none exists, and the contract must be interpreted as written. The substitution provision must neither be unreasonably extended to materially increase the risk, nor is it to be narrowly applied against the insured, inasmuch as it is designed for his protection. Since the policy is not ambiguous, it was not necessary for the court to construe the policy in its charge to the jury. None of the alleged errors enumerated on the failure of the court to give the legal construction of the contract or to construe various language found in the policy is meritorious.

■ Complaint is made as to the disallowance of appellant's "third-party complaint," "cross claim" and "counter claim." The record shows these pleadings as filed, but we find no ruling by the court thereon, nor does the brief, as required by Rule 17 (*Code Ann.* § 24-3617) point out the ruling by the court disallowing same which is essential to a consideration of these alleged errors. This record is voluminous, and we will not go out on a searching expedition for error. See *Wall v. Rhodes,* 112 Ga. App. 572 (145 SE2d 756); *Crider v. State of Ga.,* 115 Ga. App. 347 (154 SE2d 743); *Strickland v. English,* 115 Ga. App. 384 (154 SE2d 710); *Coley v. Smith,* 117 Ga. App. 822 (162 SE2d 216); *Allen v. Carter,* 119 Ga. App. 825 (168 SE2d 901). Again, under the authority of *Code Ann.* § 38-801 (Ga. L. 1966, p. 502; 1968, pp. 434, 435; 1968, p.

1200), a notice to produce certain documents was served. Error is enumerated on the failure to produce, but nothing is shown in the brief as to whether or not these documents were requested of counsel and not produced in court, or whether this was ever called to the attention of the trial court and a definite ruling obtained thereon. As has been heretofore stated by this court in the *Wall* case, supra, "without the aid of the brief of counsel, this court cannot identify or pass upon the contention which the appellant seeks to urge as cause for reversal," for the brief must make the alleged error intelligible "or this court has nothing before it for decision." The brief fails to point out where in the record or the transcript any ruling of the court was made on this point. Accordingly, these alleged errors are not found to be meritorious.

■ During the trial, the plaintiff, Godley, was questioned about a conversation he had with an adjuster for the insurer who was investigating the collision, with respect to what Godley, the insured, wanted done with these claims against him, because the answer would be self-serving, hearsay, irrelevant and immaterial. The testimony elicited was in reference to a conversation between the adjuster and the petitioner, part of which was already in evidence, and showed that the plaintiff never signed a "non-waiver agreement," never was advised by the company it was not going to cover him on the cases, was seeking information as to when they would "settle the case and get through with it," and the insured expected the insurer to protect him in the case. This testimony was not self-serving, hearsay, or irrelevant, but material to the issues in the case. We find no error in this complaint.

■ The correspondence showing the investigation of the collision by agents and attorneys of insurers, the answer in a Georgia case filed by counsel employed by the insurance company, as attorney for the insured, and the Florida judgments being the very sum, substance and subject matter on which this action is based, the court did not err in allowing same in evidence as exhibits. Further, the deposition of the Florida trial judge was taken which showed how the judgments occurred, and the correspondence shows the assumption and responsibility by the insurer, as well as the degree in defending the petition before the company elected to cease same because it felt there was no coverage.

■ Examination of the entire charge fails to disclose that the charge is "replete and repetitive" insofar as the contentions of the plaintiff are concerned. The court properly charged the jury with respect to the contentions of the defendant and particularly as to its right to disclaim or deny coverage.

■ The court did not err in refusing to give the requests to charge which were argumentative and more favorable to the defendant.

■ A denial of summary judgment is not subject to review "by direct appeal or otherwise," unless the requirements that the lower court certify it for direct appeal are met. The same cannot be considered as an ancillary ruling after a final judgment. *Moulder v. Steele,* 118 Ga. App. 87 (162 SE2d 785); *Hood v. General Shoe Corp.,* 119 Ga. App. 649 (2) (168 SE2d 326); *Hill v. Willis,* 224 Ga. 263, 266 (161 SE2d 281); *Skylark Enterprises v. Marsh & McLennan,* 121 Ga. App. 235 (173 SE2d 421).

The rulings in Divisions 1 and 3 will require a reversal and a new trial. Since a new trial will be required, a number of the enumerations of error have not been considered since they may not occur again.

*Judgment reversed in accordance with the above opinion. All the Judges concur in Division 1 except Bell, C. J., and Evans, J., who dissent. Bell, C. J., and Evans, J., concur in Division 2. Pannell, Deen and Quillian, JJ., concur specially. Jordan, P. J., Hall, P. J., Eberhardt and Whitman, JJ., dissent. All the Judges concur in Division 3 except Bell, C. J., and Evans, J., who dissent.*

PANNELL, Judge, concurring specially. I concur in all divisions of the opinion and the judgment reached, with the exception of Division 2, with which I specially concur. The insured testified at one point that he was using his mother's automobile, because she was using his automobile on a trip. He testified further that he was using his mother's automobile and that his pick-up truck, which he could have used on this particular occasion, had a flat tire or a tire that was almost flat. This last evidence was sufficient to authorize the jury to find that the mother's automobile was being used "as a substitute for the owned automobile [the truck] when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." While the testimony that he

was using his mother's automobile because she was using his automobile, while standing alone would not have supported a verdict that it was being used as a substitute automobile, this by no means makes the subsequent testimony conflict with the prior testimony. He did not testify that the sole reason for using his mother's automobile on the occasion in question was merely because they had swapped automobiles. If he had so worded his testimony, there may have been a conflict, but here there is none.

I am authorized to state that Judges Deen and Quillian, join in this special concurrence.

HALL, Presiding Judge, dissenting. I dissent from the holding that the evidence authorized a finding that the mother's automobile was "a temporary substitute automobile" under the policy. The policy provides coverage for "A temporary substitute automobile," which it defines as "any automobile . . . used with the permission of the owner . . . as a *substitute for the owned automobile* . . . when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

The evidence is uncontradicted that Godley was driving the automobile owned by his mother and insured by Phoenix. On January 15, 1966, the mother borrowed the automobile belonging to Godley and left her own automobile for the use of Godley. Godley testified that "She told me that she wanted to go to Albany, Ga. And my car was newer than her car, and in better shape. It had better tires and she asked me could she use my car to go and leave her car there." Godley also swore in an affidavit in the previous trial "That the only reason he was driving his mother's 1958 Chevrolet automobile on said 16th day of January, 1966, was because she had his 1963 Ford automobile with her on said trip and left her 1958 Chevrolet automobile at home for his use, in the event he needed to use it, while she was away from home using his 1963 Ford automobile." Godley drove his mother's car on January 16, 1966, when he had the accident. On this same day his mother was driving his car to Albany. A finding is demanded that his mother's car was a *substitute* for his car and that his car was a *substitute* for his mother's car and that neither car had been "withdrawn from use because of its breakdown, repair, servicing, loss or destruction."

A leading authority on insurance explains this type of policy provision as follows: "The standard policy presently extends protection to a vehicle temporarily used as a substitute for the automobile insured when the latter is withdrawn from normal use for specified reasons. These include such things as breakdown, repair, servicing, loss or destruction. The purpose is to extend a temporary protection, as distinguished from the replacement or transfer provisions of the policy, when such a contingency prevents the insured from making use of the vehicle he had protected by insurance, thus necessitating an emergency or temporary substitution. It is contemplated that the same use will be made of the substituted vehicle as would have been made of the one originally insured. Actualities, and not possibilities, determine whether an automobile is a substitute automobile within such a provision. If the vehicle insured can be operated, some overt act is required to prove its withdrawal from service. . ." 7 Appleman, Insurance Law and Practice 95, § 4293.5.

At this trial Godley further testified that he took his mother's automobile home Saturday night, that on Sunday after he had cleaned up he intended to go to St. Marys to see a friend, and that he drove his mother's automobile. He was then asked by his attorney "Why didn't you use your pickup?" He testified "It had a tire going down. . ." In response to another question from his attorney, "And the truck was disabled?" He stated "Yes, sir." This in no way conflicts with his previous testimony that he and his mother had exchanged automobiles and that her automobile was a substitute for his which was not disabled but was being used by his mother. However, if this latter testimony could be considered contradictory or equivocal, it is elementary hornbook law in Georgia that *after verdict* when a party, relying upon his own testimony to establish his claim, testifies contradictorily or equivocally, or gives more than one version of the matter, this court must adopt as his testimony that version most unfavorable to him. See cases collected and cited in *Chandler v. Gately,* 119 Ga. App. 513, 521 (167 SE2d 697); *Southern R. Co. v. Hobbs,* 121 Ga. 428 (1) (49 SE 294).

In my opinion, the evidence will not authorize a finding that his mother's automobile was a temporary substitute for his truck. On

the contrary, the evidence demands a finding that her automobile was temporarily substituted for his sedan which was not disabled nor withdrawn from normal use, but was in fact being driven by the mother on the day of the accident.

I am authorized to state that Presiding Judge Jordan and Judges Eberhardt and Whitman concur in this dissent.

EVANS, Judge, dissenting. I cannot agree to Divisions 1 and 3, or to the corresponding headnotes. I therefore dissent from the judgment of reversal. The jury had evidence of the fact that the insurer started out representing him under the policy, but in the course of events of this case in the various courts it ceased to do so. "A liability insurer, which with knowledge of a ground of forfeiture or non-coverage under an insurance policy assumes and conducts the defense of an action brought against the insured, is thereafter estopped in an action upon the policy from asserting such forfeiture or noncoverage. However, the insurer may avoid the estoppel by giving timely notice fairly informing the insured that, notwithstanding its defense of the action, it disclaims liability and does not waive the defenses available to it against the insured." *State Farm Mut. Auto. Ins. Co. v. Anderson,* 104 Ga. App. 815 (123 SE2d 191). See also *Jones v. Ga. Cas. &c. Co.,* 89 Ga. App. 181, 185 (78 SE2d 861). The jury had for consideration various testimony and evidence as to whether there was a timely notice to the insured that the insurer felt it had no coverage and was not required to defend. "The general rule supported by the great weight of authority is that if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage. The insurer's conduct in this respect operates as an estoppel to later contest an action upon the policy, regardless of the fact that there has been no misrepresentation or concealment of material facts on its part, and notwithstanding the facts may have been within the knowledge of the insured equally as well as within the knowledge of the insurer. The reason which impels the insurer to defend the suit or its good faith in doing so is likewise

immaterial. Indeed, the fact that the insurer's conduct may have been due to a mistake of law does not in and of itself prevent such an estoppel of the insurer. Furthermore, an invitation to the counsel for the insured, refused by said counsel, to participate in the preparation and trial of the action brought against the insured, will not prevent an estoppel or waiver. Moreover, if the insurer in fact retains control over the defense of the action brought against the insured, an estoppel on its part to say that the injury was not one covered by the policy is not prevented by reason of the fact that the insured is permitted to, and does, participate in the defense through its or his own attorney.

"While some cases in this respect require prejudice to the insured to be shown, or proved, other cases hold that prejudice to the insured is conclusively presumed, or that the loss of the right to control and manage the case is itself sufficient prejudice to the insured. It has been deemed that the undertaking to defend may be of no value, but of great danger, to the insured if, after abandoning all control of the suit, he may yet be liable for a judgment against him. 29 AmJur 672, 673, Insurance, § 878." *Jones v. Ga. Cas. &c. Co.,* 89 Ga. App. 181, 185, supra. See also 44 AmJur2d 436-438, §§ 1553-1555.

While the insurer in the case sub judice explained its reasons for no longer representing the insured, the jury, from its examination of all the evidence, was authorized to find the insurer departed from the case in bad faith and was estopped to now assert forfeiture or noncoverage. It follows from the above that the lower court did not err in charging on estoppel, bad faith, and penalties as provided by the Insurance Code. I find no error sufficient to authorize reversal thereon, nor do I find any error in the court's failure to charge as to the effect of the dismissal of the suits in Georgia and the subsequent filing of the suits sued to judgment in Florida as the same would apply to the doctrines of waiver, estoppel and claims for damages of bad faith and penalties.

Plaintiff charged and proved the insurer "summarily withdrew from the defense of said case and disclaimed any duty to plaintiff arising from said insurance contract." He charges the insurer not only with bad faith but negligence in that the insurer failed to exercise ordinary care, but should have settled said claim within

the policy limits. The insurer knew that it could have settled said claim within the policy limits. The failure to do so resulted in the great damage inflicted upon the plaintiff because the defendant-insurer "acting in bad faith, not only refused to settle said claims, although demand had been made of it to do so." It withdrew from the case and left its insured exposed to suffer the judgment against him. The plaintiff alleged and proved that he "never executed any non-waiver agreement with said insurance company." The conduct of the insurance company in taking over and investigating and subsequently filing defensive pleadings for him caused plaintiff "to rely upon their performing their obligation and duties under said contract of insurance." Thus this suit is not merely for "bad faith" but for out-and-out negligence by reason of the actions of the insurer in dropping him in mid-stream. "The insured's suit is not upon the contract but rather in tort *and naturally involves a duty and an alleged breach of that duty.*" (Emphasis supplied). *U. S. Fidel. &c. Co. v. Evans,* 116 Ga. App. 93, 94 (156 SE2d 809).

The cases cited by the majority are all based upon the good faith rule as opposed to the "bad faith" rule which requires "a frivolous and unfounded denial of liability." The bad faith rule is not applicable to this case for the insurer rejected offers to settle within the policy limits, filed defensive pleadings and entered into defense of this case without obtaining a "non-waiver agreement" or making a "reservation of rights stipulation." *Thus we have bad faith and negligence in this case, plus estoppel.* The insurance company here cannot escape by claiming "no lack of good faith unless its actions were frivolous." The insurer should be held to account, and was held to account for its negligence, in making paramount its interests rather than those of the insured. It utterly failed to accord the interests of its insured the same faithful consideration it gave its own interests. Thus the rule that if there is "any reasonable grounds for contesting the claim there is no bad faith" does not apply to the factual situation here.

It should be borne in mind that when the suits were initially filed, the insurance company had 30 days in which to make an investigation as to whether its coverage was effective before filing any defenses. If more time was needed, it had the right to file a defense under a "non-waiver agreement" with the insured, or if

the insured would not sign such "non-waiver agreement," then it had the right to arbitrarily give him a notice that it was defending under a "reservation of rights" stipulation. See: *Jones v. Ga. Cas. &c. Co.,* 89 Ga. App. 181, 185, supra; *State Farm Mut. Auto. Ins. Co. v. Anderson,* 104 Ga. App. 815, 818, supra; s. c., 107 Ga. App. 348 (2) (130 SE2d 144). It did neither, but peremptorily filed the defense, thereby, in effect, assuring the insured that his coverage was effective. While it is true that these suits were later dismissed and new suits were filed, the insurance company had already "elected its position" and was estopped to thereafter take a different position, even though these first suits were dismissed and the second suits were filed. *Board of Educ. of Glynn County v. Day,* 128 Ga. 156 (6) (57 SE 359). See the discussion in the *Day* case near bottom of page 164 through 166 where the "election of positions" was made by plaintiff. The rule works both ways, and is just as binding on a defendant who "elects his position."

As to citation of textbooks and suggested foreign authorities, of course, our Georgia decisions take precedence. See *Hard v. Housing Authority of the City of Atlanta,* 219 Ga. 74, 81 (132 SE2d 25).

The insured sought here not merely to recover from insurer the face value of the automobile liability policy to which he was entitled under his contract under Georgia law, but for damages to him far in excess of this amount which resulted from the complete and absolute failure of the insurer to protect him. If it was caused by legally culpable neglect or bad faith of an agent of the insurer (attorney at law hired by insurer to defend suit), the plaintiff would be entitled to recover. Smoot v. State Farm Mut. Auto. Ins. Co., 299 F2d 525; State Farm Mut. Auto. Ins. Co. v. Smoot, 381 F2d 331. Indeed there was evidence authorizing the jury to find there was wilful misconduct—entire want of care—which would raise a presumption of conscious indifference to the consequences. See *Code* § 105-2002. We do not here have merely a bad faith case but one of absolute negligence. The insurer first came in, defended, then summarily departed the case, thereby showing sufficient conduct to create an estoppel. The jury was authorized to find under the evidence not only a violation of the contract but negligence in representing the insured. The tort liability by reason thereof was the injury to the insured far in excess of the policy,

authorizing punitive damages and attorneys' fees as well by reason of its wilful misconduct. It is true all of this was not demanded by the evidence but was authorized by the evidence. The trial judge correctly charged the law. The insured during the entire litigation was honest in making his affidavits and in aiding the insurer. Thus his testimony could not be said to be contradictory or equivocal. He never tried to hide anything in regard to the three cars involved. His policy was broad enough to cover him in driving his mother's car when his other vehicle, which he would have been driving, was "withdrawn from normal use because of its breakdown" (flat tire). This clause was written in the policy for his protection, and having paid for it, he is entitled to it. I would affirm the judgment.