### 46567. J. H. EWING & SONS v. MONTGOMERY.
### 46568, 46569. THE SEVENTH SEVEN, INC.
### v. MONTGOMERY; and vice versa.

EBERHARDT, Judge. On January 10, 1969, W. P. Montgomery sold and conveyed to The Seventh Seven, Inc. (7-7) real property in Brunswick known as the Lanier Plaza Shopping Center. At the time of the sale and prior thereto lease contracts were in force with tenants occupying business establishments in the Plaza, and J. H. Ewing & Sons was collecting the rents and otherwise acting as leasing manager. At issue here is the proper method of apportionment between Montgomery and 7-7 of "overage," "percentage" or "excess" rent as provided for in the leases with Harold's Men's Shop, Inc., Brunswick Vogue, Inc., and Arnold's Shoes, Inc.

Each of these leases provides for a fixed monthly rental and, in addition, rental in the form of a percentage of gross sales in excess of a stated dollar volume of annual gross sales. The lease with respect to Harold's Men's Shop provides in para-

graph 3 for a percentage rental equal to 5% of gross sales in excess of $135,500 for each 12 months period, computed from commencement of the term of the lease. Other provisions of the lease require Harold's to make monthly written statements showing the gross amount of sales for the preceding month and to pay concurrently with the delivery of the statements percentage rental equal to 5% of monthly gross sales in excess of $11,291.67 (1/12 of $135,500). It is further provided that "Lessor shall make an annual adjustment of percentage rentals paid monthly under this contract so that the total overage rentals paid do not exceed, for the twelve (12) months' period comprising the lease year, the percentage of gross sales, as set out in Paragraph 3 above, if figured on a 12-month basis."

The Brunswick Vogue lease provides for a percentage rental of 5% of gross sales in excess of $90,000 per annum, but does not require monthly statements or monthly payments of "excess" rent. The Arnold's Shoes lease provides for rent of 6% of annual gross sales in excess of $107,500 and requires the monthly statements, but does not require any monthly payments of "excess" rent.

The contract of sale of Lanier Plaza between Montgomery and 7-7[1] provides that "Taxes, rents, insurance . . . are to be prorated between the seller and purchaser from date that the sale is finally closed." At the closing on January 10, a rent distribution agreement was entered into by Montgomery, 7-7, and Ewing, providing in part as follows: ". . . all rents paid and/or accruing under said leases up to and including this date belong to and shall go to Montgomery, and all rents paid and/or accruing after this date shall go to [7-7] . . . All of said rents on said leases . . . accrued up to and including this date, shall be by J. H. Ewing & Sons delivered to Montgomery . . . and all rents accruing subsequent to this date shall be by J. H. Ewing & Sons delivered to [7-7] . . ." The agreement, also signed by Ewing, provided that Ewing was to continue collecting the

---

[1] Individuals are named as purchasers in the contract. However, all parties to the appeal treat the actual closing purchaser as 7-7, and we do likewise for purposes of this appeal.

rents and was to prorate them between Montgomery and 7-7 as agreed upon.

For their respective rent years involved here, Harold's, Brunswick Vogue, and Arnold's Shoes all had excess annual gross sales so that each became obligated for "excess" or "percentage" rent. Ewing apportioned the rent between Montgomery and 7-7 according to the proportion of the rent year that each owned the applicable lease. For example, the rent year of Harold's was September 1 through August 31; its annual gross sales totaled $230,351.12; the "excess" rental was 5% of sales in excess of $135,500 per annum, or 5% of $94,851.12, which amounted to $4,742.60; Montgomery owned the shopping center and lease for 4⅓ months of the rent year, and there was apportioned to him 4⅓ twelfths of $4,742.60, or $1,712.61, and to 7-7 the balance.

Montgomery brought the instant complaint against 7-7 and Ewing, contending that he was entitled to rent computed on the basis of gross sales qualifying for percentage rent during the months the leases were owned by him. For example, under his method of computation, monthly sales for Harold's during the four (sic) months Montgomery owned the lease totaled $101,473.26; 1/12 of $135,500 (annual qualifying amount for "excess" rent)=$11,291.67 (monthly qualifying amount for "excess" rent); $11,291.67 x 4=$45,286.58 (sic); (qualifying amount for four months); $101,473.26 minus $45,286.58=$56,286.58 (sic) (gross sales in excess of qualifying amount for four months); 5% x $56,286.58=$2,814.32 ("excess" rent due Montgomery); $2,814.32 minus $1,712.61 (amount actually paid Montgomery under Ewing's method of computation)=$1,101.71 additional amount due Montgomery, for which he sued in regard to the Harold's lease.

7-7 counterclaimed against Montgomery for all "excess" rent paid to the latter, contending that 7-7 was entitled to all of it because the annual qualifying amounts before "excess" rent would "accrue" had not been reached while Montgomery owned the leases but had been reached and exceeded while 7-7 owned them. For example, the annual qualifying amount for Harold's was $135,500; and gross sales while Montgomery owned the lease amounted only to $101,473.26, the qualifying dollar vol-

ume of $135,500 being reached while 7-7 owned the lease.

All parties moved for summary judgment, Montgomery contending that under his method of computation he was entitled to additional "excess" rent with respect to all three leases; 7-7 contending that Montgomery was not only entitled to no recovery, but that 7-7, under its method of computation, was entitled to recover of Montgomery all "excess" rent paid him; and Ewing contending, under its method of computation, that the rents had been correctly apportioned between the two so that no recovery could be obtained against it by Montgomery. The trial court granted Montgomery's motion in the amount sued for with respect to the Harold's lease, but denied the motion with respect to the other two leases. The motions of 7-7 and Ewing were denied, as well as a motion by Ewing, a nonresident of the county, to dismiss because of lack of jurisdiction. *Held:*

1. The rent distribution contract recites that Ewing had been collecting the rents for Montgomery "and shall continue to do so for [7-7]"; provides for apportionment of rents between Montgomery and 7-7, "and by delivery of copy hereof to [Ewing, it is] thereby directed to handle and distribute said rents" as provided for in the agreement; and contains an express agreement by Ewing, signed by its president, to prorate the rents as set forth in the agreement. Under these circumstances we think that Ewing, a resident of Fulton County, has collected the rentals as an agent of Montgomery and of 7-7, and could be joined as a defendant with 7-7 in the county of the latter's residence in a suit by Montgomery for alleged improper distribution and receipt of rents covered by the contract. Constitution of 1945, Art. VI, Sec. XIV, Par. IV (*Code Ann.* § 2-4904); *Great Southern Acc. &c. Co. v. Guthrie,* 13 Ga. App. 288 (4) (79 SE 162). Accordingly there was no error in overruling Ewing's jurisdictional or venue motion.

2. Ewing and 7-7 appeal from the grant of partial summary judgment to Montgomery with respect to the Harold's lease. *Code Ann.* §§ 6-701 (a) 4, 81A-156 (h). The trial court agreed with Montgomery's basic contention that he was entitled to "excess" rent for the months the leases were owned by him calculated on the basis of monthly sales in excess of one-twelfth of the

annual qualifying amount. However, judgment was apparently granted him as to the Harold's lease but denied as to the others because the Harold's lease retained the provision for monthly payments of "excess" rent by the lessee whereas it was stricken from the printed form with respect to the others.

We cannot agree with Montgomery's method of calculation or with the trial court's application of it with respect to the different leases. But neither can we agree with the methods asserted by 7-7 or by Ewing. The rent distribution agreement provides that rents "accrued" or "accruing" through January 10 shall belong to Montgomery, and rents "accruing" after that date shall belong to 7-7. The Supreme Court, in dealing with the meaning of the word "accrue," has held that it must be construed in connection with its context and the purposes of the instrument in which it is used. *Hartsfield Co. v. Shoaf,* 184 Ga. 378 (191 SE 693). In the instant case the obvious purpose of the rent distribution agreement was to apportion the "excess" rents as of January 10, 1969. Hence time is an important factor in determining the manner of calculation. And, construing the words "accrue" or "accruing" in context with the lease agreements, it is inescapable that each dollar of sales in every month of the rent year, whether an "excess" or a "base" dollar, contributed as much to "accrue" the total "excess" rent as any other dollar of sales. Hence we conclude that the proper basis for apportionment must combine the factors of time and sales, and that Montgomery and 7-7 are each entitled to "excess" rent in proportion to the ratio of dollar volume of sales during the time each owned the lease to the total dollar volume of sales for the rent year. We do not regard the provision in the Harold's lease requiring payment of monthly "excess" rental in an amount equal to 5% of monthly gross sales in excess of $11,291.67 (1/12 of $135,500) as decisive, or even relevant. Each of the leases provides for rental in the form of a percentage of gross sales in excess of a stated dollar volume of *annual* gross sales, and it is apparent that the monthly-payment provision is a collection mechanism only. This is recognized by the provision itself, which requires a yearly adjustment to make the total monthly payments equal the amount due as a percentage of excess *an-*

*nual* gross sales.

Since the trial court awarded judgment to Montgomery as to the Harold's lease in an amount in excess of that to which he is entitled under the method of computation which we have held to be proper,[2] that judgment must be reversed.

3. While the holding in Division 2 necessarily controls the identical questions with respect to the Brunswick Vogue and Arnold's Shoes leases, and the method of computation we have found to be proper will be controlling upon further proceedings, we nevertheless can make no disposition as to Montgomery's cross-appeal complaining of the denial of summary judgment with respect to the other leases, nor can we dispose of Ewing's or 7-7's enumerations of error on the denial of summary judgment to them, since the trial court has not certified these rulings for review. *Moulder v. Steele,* 118 Ga. App. 87 (3) (162 SE2d 785); *Young v. Reese,* 118 Ga. App. 114, 118 (162 SE2d 831); *Hood v. General Shoe Corp.* 119 Ga. App. 649 (2) (168 SE2d 326); *Peachtree on Peachtree Inn, Inc. v. Camp,* 120 Ga. App. 403, 411 (170 SE2d 709); *John L. Hutcheson Memorial Tri-County Hospital v. Oliver,* 120 Ga. App. 547 (2) (171 SE2d 649); *Skylark Enterprises, Inc. v. Marsh & McLennan, Inc.,* 121 Ga. App. 235 (1) (173 SE2d 421); *Campbell v. Carroll,* 121 Ga. App. 497, 500 (174 SE2d 375); *Brooks v. Holman,* 121 Ga. App. 720 (1) (175 SE2d 131); *Home Indem. Co. v. Godley,* 122 Ga. App. 356, 366 (177 SE2d 105); *American Bank of Atlanta v. Gray,* 122 Ga. App. 443 (177 SE2d 208); *State Hwy. Dept. v. Kirchmeyer,* 123 Ga. App. 185, 187 (179 SE2d 693).

---

[2]The ratio of sales in the four months claimed by Montgomery ($101,473.26) to total sales for the rent year ($230,351.12) is approximately 44.05%, making his share 44.05% of $4,742.55 ("excess" rent for the year) or $2,089.09. Deducting $1,712.61 previously distributed to him by Ewing, he would be entitled to judgment in the amount of $376.48 with respect to the Harold's lease, rather than $1,101.71 awarded by the court for the same four-month period (Montgomery did not claim the ten days in January). The formula should be applied to the other leases for determining the amount due.

4. The remaining enumerations of error relate to the sustaining or overruling of objections to various portions of affidavits. Since the ruling we have made in Division 2 is not affected by the inclusion or exclusion of these portions, we make no disposition as to these enumerations of error.

*Judgment granting partial summary judgment in main appeals Nos. 46567 and 46568 reversed; cross appeal dismissed. Hall, P. J., and Deen, J., concur. Whitman, J., not participating.*

ARGUED SEPTEMBER 20, 1971—DECIDED NOVEMBER 12, 1971.

*Jones, Cork, Miller & Benton, Wallace Miller, Jr.,* for appellants.

*George E. Saliba,* for appellee.

