S93G1551. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. MARTIN et al.
(444 SE2d 739)

BENHAM, Presiding Justice.

While riding his bicycle in June 1989, Bernard Martin was struck by a truck owned by Larry Day, driven by David Delk, and insured by petitioner Georgia Farm Bureau Mutual Insurance Company ("GFB"). Martin's mother, acting individually and as her son's next friend, filed suit against Delk and Day. A default judgment was entered against Delk in December 1990,[1] and Day was voluntarily dismissed. Respondents filed the instant action against GFB in October 1992, alleging that it was legally obligated under its contract of insurance to pay to respondents the amount of the default judgment entered against Delk. The trial court denied GFB's motion for summary judgment in which the insurer asserted that its financial obligation was limited to the amount of statutory minimum coverage ($15,000), or to the policy limits ($25,000). The Court of Appeals granted GFB's application for interlocutory review and, relying on *Leader Nat. Ins. Co. v. Kemp & Son,* 259 Ga. 329 (380 SE2d 458) (1989), and *Starnes v. Cotton States Mut. Ins. Co.,* 194 Ga. App. 320 (2) (390 SE2d 419) (1990), affirmed the trial court's decision, concluding that the extent of damages incurred by respondent and payable by GFB was for determination by a jury. *Ga. Farm Bureau Mut. Ins. Co. v. Martin,* 209 Ga. App. 237 (433 SE2d 315) (1993). We granted GFB's application for a writ of certiorari to determine whether the insurer's liability was statutorily or contractually limited.

1. While the Court of Appeals recognized that respondents were not automatically entitled to recover from GFB the full amount of the judgment entered against Delk (209 Ga. App. at 239), it also stated that the insurer was not insulated from liability to the respondents for payment of *any judgment* obtained by them based on Delk's operation of the insured vehicle. Id. See also 209 Ga. App. 237, Div. 4. Relying on language from *Mahone v. State Farm Mut. Auto. Ins. Co.,* 188 Ga. App. 664 (2) (373 SE2d 809) (1988), and *Berryhill v. State Farm Fire &c. Co.,* 174 Ga. App. 97 (329 SE2d 189) (1985), respon-

---

[1] The default judgment authorized Martin to recover from Delk $789.52 as special damages, $22,000 as general damages, and $100,000 as punitive damages, in addition to interest and costs.

dents contend that GFB is liable for any judgment rendered against Delk once it is established that GFB had notice of the pending lawsuit. See also *Starnes v. Cotton States Mut. Ins. Co.,* 194 Ga. App., supra, aff'd *Cotton States Mut. Ins. Co. v. Starnes,* 260 Ga. 235 (392 SE2d 3) (1990).

We do not agree with respondents that the cited cases are authority for the asserted rule of law. In each case, the language was dicta, for in none of the cases was the court faced, as we now are, with the task of defining the financial limitations of an insurer's liability to a third party for the insurer's failure to defend an insured in a tort action brought by the third party. In *Berryhill,* the issue was whether the tortfeasor's victim, who had obtained a default judgment against the tortfeasor, could recover from the tortfeasor's insurer, which had not been given the contractually-required notice of the litigation against the tortfeasor; in *Mahone,* the issues were whether the tortfeasor was covered by the insured's policy and whether the named insured, rather than the tortfeasor, could give the contractually-required notice of litigation to the insurer; and in *Starnes,* both appellate courts focused on whether an otherwise uninsured permissive driver could expressly decline the coverage provided by the vehicle's insurer.[2] In the absence of controlling authority, we conclude, for the reasons set out below, that the scope of the insurer's liability is not so broad as to encompass "any judgment."

2. Relying on this court's decisions in *Cotton States Mut. Ins. Co. v. Starnes,* supra, and *Cotton States Mut. Ins. Co. v. Neese,* 254 Ga. 335 (2) (329 SE2d 136) (1985),[3] GFB asserts that its liability to respondents is limited to the statutorily-set minimum amount of compulsory insurance because its assertion of the application of the "rule of election" as a defense to coverage in this case would violate public policy. In other words, after admitting that application of the "rule of election" in this case would be against public policy under *Starnes,* GFB reasons that the statutorily-set minimum coverage constitutes the insurer's maximum liability where a defense to coverage is void as against public policy. See *Neese.*

---

[2] The Court of Appeals determined at 194 Ga. App. 322 that, under OCGA § 33-7-15, the insurer was not relieved of liability, "to the extent of the mandatory liability coverage provided by the policy," even though the insured had failed to comply with the policy's provision requiring notice of the pendency of litigation. This court did not address the issue, having granted certiorari only on the issue of the "rule of election."

[3] In *Starnes,* we determined that public policy prevented an insurer from invoking a vehicle operator's declination of coverage under the vehicle owner's insurance policy to escape coverage where the vehicle operator had access only to that source of liability insurance. In *Neese,* this court, after determining that a policy exclusion was unenforceable on public policy grounds, concluded that the exclusion was unenforceable only to the extent of insurance required by the compulsory insurance law. See also *Fed. Mut. Ins. Co. v. Dunton,* 213 Ga. App. 148 (444 SE2d 123) (1994).

The "rule of election" became a part of automobile insurance law in *Ericson v. Hill*, 109 Ga. App. 759 (137 SE2d 374) (1964), at a time when liability insurance was procured for the benefit and protection of the insured. *Starnes,* supra at 237. In *Ericson,* the Court of Appeals held that a person driving a car with the owner's permission (thereby qualifying as an "insured" under the owner's policy) was bound by the settlement entered into by the injured party and the vehicle owner's insurer since the permissive driver had "chosen to invoke the coverage" provided by the owner's insurer. *Ericson v. Hill,* supra at 761. The appellate court described the permissive driver as a third-party beneficiary to the insurance contract with "an independent power of election" by which she could seek or reject the coverage available to her under the policy issued to the vehicle owner. Id. The "rule of election" provided that one who met the policy's definition of "insured," but who was not the named insured of that policy, was covered by that policy only if he so elected to subject himself to the terms and conditions of the insurance contract to which he was not a party. Of paramount importance to the operation of the rule was its contractual footing: a non-party to a contract could not be subjected to the terms and conditions of the contract without his consent. The courts opined that if the insurer could not force a third party "to relinquish a right by treating it as an insured without its consent, such third party ha[d] a right of election." *Leventhal v. American Bankers Ins. Co.,* 159 Ga. App. 104 (4) (283 SE2d 3) (1981).

With the passage in 1974 of compulsory motor vehicle liability insurance came a shift in the focus of insurance coverage. Compulsory insurance required that no motor vehicle registered in Georgia could operate unless the owner had minimum liability insurance. OCGA § 33-34-3 (a). In addition, "insured" was statutorily defined to include one driving an insured car with the permission of the owner. OCGA § 33-34-2 (5). As a result of the passage of compulsory insurance, insurance coverage no longer existed solely to protect the insured tortfeasor from financial ruin, for the compulsory insurance legislation also had as its goal the compensation of innocent victims injured by negligent motorists. *Neese,* supra at 337. Thus, with the passage of the Motor Vehicle Accident Reparations Act, it became clear that insurance "followed the car" (*Ga. Cas. &c. Co. v. Waters,* 146 Ga. App. 149, 152 (246 SE2d 202) (1978)), and the role of the "rule of election" diminished. As a matter of law, not contract, the insurance covering the car also covered a non-owner driving with permission, regardless of whether the driver expressly sought such coverage. The judicial concern that parties should not be forced into a contractual relationship they did not seek was negated by the passage of insurance legislation that "occasionally requires parties to enter into relationships that are contractual in nature." *Starnes,* supra, 260 Ga.

at 237. By the act of driving another's insured vehicle with permission, the driver agreed to be an insured under the owner's policy on the vehicle. Thus, no longer was an explicit election of coverage required before the insurance covering a vehicle became involved because the insurance law mandated that parties in these situations were in a contractual relationship. Therefore, the "rule of election" was limited, in cases involving mandatory automobile insurance coverage, to those instances in which an insurer sought to rely on a non-owner driver's express declination of the insurance coverage provided by the owner's policy. See *Starnes*, supra at 260 Ga. 237.

Since, in the case at bar, the non-owner driver's failure to affirmatively seek coverage under the owner's policy does not bring the "rule of election" into play, GFB cannot assert a purported lack of compliance with the rule to avoid its contractual obligation. It follows that GFB's liability is not limited by public policy to the statutory minimum coverage of $15,000. Compare *Cotton States Mut. Ins. Co. v. Neese*, supra.

3. Alternatively, GFB contends the Court of Appeals erred when it concluded that GFB's financial liability to respondents is not restricted to the policy limits of $25,000. Relying on the decisions in *Leader Nat. Ins. Co. v. Smith*, 177 Ga. App. 267 (339 SE2d 321) (1985), and *Leader Nat. Ins. Co. v. Kemp & Son*, supra, the Court of Appeals concluded that the extent of the damages for which GFB was responsible was an issue for a jury. We agree with GFB's assertion that its financial liability with regard to the judgment entered against the non-owner driver is limited to the policy limits.

In the cases cited by the Court of Appeals, the insurer was sued *by its insured* for allegedly breaching its contractual duty to defend the insured.[4] In the case at bar, *the injured party* brought suit against the tortfeasor's insurer,[5] contending that the insurer's contractual duty to pay damages on behalf of its insured makes the insurer legally obligated to pay to the victim the full amount of the damages awarded to the victim pursuant to the default judgment. When the plaintiff is the insured seeking to recover for the insurer's breach of its contractual duty to defend, there is a factual question whether the breach may have caused the plaintiff to be exposed to greatly increased liability to the injured party. See *Leader Nat. Ins.*

---

[4] In *Kemp & Son*, supra, this court observed that damages for breach of an insurance contract by failing to defend did not automatically include the full amount of the judgment rendered against the insured, and intimated that the appropriate measure of damages was that which was "traceable to [the insurer's] refusal to defend the action." Id. at 331.

[5] While GFB forcefully maintains that its policy does not cover Delk, that issue is not *within the scope of our grant of certiorari. See fn. 2, supra.* For purposes of this appeal we are assuming Delk was a permissive user and therefore covered by the policy GFB issued to the vehicle's owner.

*Co. v. Kemp*, 259 Ga. at 330. However, when the injured victim sues the insurer for the insurer's failure to defend an insured tortfeasor, the plaintiff is hard-pressed to establish the harm the plaintiff has suffered as a result of the insurer's failure to defend the tortfeasor, since, even if the insurer had done its duty, its maximum liability to the injured victim would have been the limits of the insurance policy. Thus, the insurer's failure to defend the insured tortfeasor could not have damaged the injured victim to any extent greater than the policy limits.[6]

Thus, GFB was correct in its assertion that its liability to respondents did not extend to cover "any judgment" entered against its insured, and that its liability to respondents based on the judgment against the non-owner driver cannot exceed the limits of the policy issued to the owner. Accordingly, the trial court should have granted summary judgment restricting the amount of respondents' recovery to the limits of the policy issued by GFB to the vehicle owner.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 27, 1994 —
RECONSIDERATION DENIED JULY 14, 1994.

*Dillard, Bower & East, Terry A. Dillard, Bryant H. Bower, Jr.,* for appellant.

*Helms & Helms, Catherine H. Helms, J. Jeffrey Helms, Jr.,* for appellees.

---

[6] Those entitled to receipt of insurance benefits formerly had a statutory right to seek damages caused by the insurer's failure to pay. OCGA § 33-34-6 (b). If the insurer could not establish that its failure or refusal to pay benefits to the entitled person was in good faith, OCGA § 33-34-6 (b) mandated the imposition of a penalty and reasonable attorney fees. The insurer's bad-faith refusal to pay also subjected it to punitive damages under § 33-34-6 (c). OCGA § 33-34-6 was repealed, effective October 1, 1991, with the passage of a new "Georgia Motor Vehicle Accident Reparations Act." Ga. L. 1991, p. 1608, § 1.12. The repeal of the statutory privilege to seek penalties and punitive damages applies retroactively to causes of action that accrued prior to the passage of the repeal. *Terry v. State Farm Mut. Auto. Ins. Co.*, 205 Ga. App. 224 (422 SE2d 212) (1992), cert. denied, 205 Ga. App. 901.