## A01A1281. PEACHTREE CASUALTY INSURANCE COMPANY v. BHALOCK et al.
### (556 SE2d 218)

SMITH, Presiding Judge.

This is a declaratory judgment action brought by Peachtree Casualty Insurance Company, seeking a ruling on its duty to defend and pay a default judgment under a policy issued to defendant-appellee Patricia Merritt. The sole issue is the interpretation of OCGA § 33-7-15, requiring the cooperation of the insured in the defense of a separate action under a motor vehicle liability insurance policy. The trial court found under OCGA § 33-7-15 (c) that Peachtree Casualty was adequately notified of the separate action by a third party, the claimants' attorney. Peachtree Casualty appealed the trial court's order.[1] Because the correspondence between the third-party attorney and Peachtree did not meet the requirements of the exception created by OCGA § 33-7-15 (c), we reverse.

The facts of the underlying claim are not disputed. Peachtree issued a policy of automobile insurance, including liability coverage, to Patricia Merritt. On March 14, 1997, Cedrick Merritt was driving Patricia Merritt's car and was involved in an automobile collision with Derrick Bhalock and Jawara Cross. On August 14, 1997, counsel for Bhalock and Cross sent a demand letter to Peachtree's adjuster. While the letter referred to "a copy of the complaint that we have filed against your insured," it enclosed only an unfiled, unstamped copy of an unverified complaint naming Cedrick Merritt

---

[1] None of the four defendants has responded or filed a brief with this court.

as the sole defendant; the complaint was not filed until several days later. The paralegal who sent the letter testified in her deposition that she did not send any other documents with the copy of the complaint and that she did not send a copy of the summons to Peachtree once she received it from the court.

When Peachtree's adjuster received the letter from counsel for Bhalock and Cross, she began her investigation by making inquiries of the trial court clerk. She was told that suit had been filed on August 19, 1997, but had not been returned as served. She called the clerk on approximately a monthly basis beginning in August 1997 and was repeatedly told that no service had been made on Cedrick Merritt and that he no longer lived at the address alleged in the complaint. She made attempts to locate Cedrick Merritt, including repeated calls to Patricia Merritt, who was unable to provide any information regarding the whereabouts of Cedrick Merritt. The adjuster also called counsel for Bhalock and Cross on at least four occasions before and including April 5, 1999, speaking with a paralegal or counsel's secretary. On each occasion, she was told that they had not yet served Cedrick Merritt. The paralegal for Bhalock and Cross's counsel also acknowledged that she did not inform Peachtree's adjuster that Cedrick Merritt had been located in Miami or that he had been served on April 23, 1999. Peachtree's adjuster was informed by the court clerk on October 18, 1999, that the court still had no record of successful service on Cedrick Merritt. On November 16, 1999, Peachtree received a letter from counsel for Bhalock and Cross informing it that a default judgment had been obtained against Cedrick Merritt. Only after that letter did Peachtree's adjuster learn that Merritt had been served; she had never received a summons or other process from counsel. Peachtree then brought this declaratory action against Patricia Merritt, Cedrick Merritt, Bhalock, and Cross.

OCGA § 33-7-15 (a) requires the insured under a motor vehicle liability insurance policy to forward to his insurer "a copy of every summons or other process relating to the coverage under the policy and to cooperate otherwise with the insurer in connection with the defense of any action or threatened action covered under the policy." Subsection (b) provides that failure to comply with this requirement shall constitute a breach of the policy "which, if prejudicial to the insurer, shall relieve the insurer of its obligation to defend its insureds under the policy and of any liability to pay any judgment or other sum on behalf of its insureds." Finally, subsection (c) provides:

> Subsections (a) and (b) of this Code section shall not operate to deny coverage for failure to send a copy of a summons or other process relating to policy coverage if such documents

are sent by a third party to the insurer or to the insurer's agent by certified mail or statutory overnight delivery within ten days of the filing of such documents with the clerk of the court. If the name of the insurer or the insurer's agent is unknown, the third party shall have a period of 30 days from the date the insurer or agent becomes known in which to send these required documents. Such documents must be sent to the insurer or agent at least 30 days prior to the entry of any judgment against the insured.

As it is undisputed that neither Patricia Merritt nor Cedrick Merritt ever forwarded the summons and complaint to Peachtree and never contacted the insurer in any way, the dispositive issue is whether the courtesy copy of an unfiled complaint forwarded to Peachtree by counsel for Bhalock and Cross satisfies the requirement of subsection (c) that a third party forward "a copy of a summons or other process" to the insurer. We find that, standing alone as it does in this case, it does not.

It is undisputed that no summons was forwarded with the copy of the complaint; we therefore must consider what is meant by the words "or other process." Process in a civil action is extensively described in OCGA § 9-11-4. It consists of the summons and related documents issued by the trial court to give notice to a defendant of the pendency of the action, whether by personal service, publication, or alternative methods as provided in that Code section. "Process is the means whereby a court compels the appearance of a defendant before it or a compliance with its demand. [Cits.]" *Dansby v. Dansby*, 222 Ga. 118, 121 (1) (149 SE2d 252) (1966). An unfiled courtesy copy of a complaint does not constitute "summons or other process" within the meaning of OCGA § 33-7-15. In *Chadbrooke Ins. Co. v. Fowler*, 206 Ga. App. 778, 780 (426 SE2d 578) (1992), this court reversed a trial court's denial of summary judgment for the insurer, because "the plaintiffs did not send a copy of the 'summons or other process' within ten days of the filing of the lawsuit in this case." Id.

Because none of the defendants below has seen fit to file a brief on appeal, we do not have the benefit of their argument or analysis of the relevant law. But those cases in which this court declined to apply the provisions of OCGA § 33-7-15 (c) to find a lack of notice are distinguished from the facts of the case before us. In *Weekes v. Nationwide Gen. Ins. Co.*, 232 Ga. App. 144 (500 SE2d 620) (1998), the insurer received not only a copy of the already-filed complaint, but a copy of the sheriff's successful *entry of service* upon its insured. The issue presented was whether the failure to send the material by certified mail rendered the notice insufficient under OCGA § 33-7-15. Id. at 147-148 (3) (a). We held that it did not and that a jury question

was presented, particularly since the insurer admitted in judicio that it had received the letter. Id. at 149. In *Ga. Farm &c. Ins. Co. v. Martin*, 209 Ga. App. 237 (433 SE2d 315) (1993), rev'd on other grounds, 264 Ga. 347 (444 SE2d 739) (1994), "notice of the suit was provided by the insured, arguably twice." 209 Ga. App. at 238 (1). In *Starnes v. Cotton States Mut. Ins. Co.*, 194 Ga. App. 320, 322 (1) (390 SE2d 419), aff'd, *Cotton States Mut. Ins. Co. v. Starnes*, 260 Ga. 235 (392 SE2d 3) (1990), the insureds personally provided "prompt and adequate" notice of the litigation to their insurer's office as soon as they were served. These insurers therefore received notice under the provisions of OCGA § 33-7-15 (a) and (b), and subsection (c) by its terms does not apply unless the insured has failed to comply with subsections (a) and (b).

A recurring theme of these cases is that "[t]he primary purpose of the notice requirement contained in OCGA § 33-7-15 is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances. [Cit.]" *Chadbrooke Ins. Co.*, supra at 780; see also *Weekes*, supra at 148 (3) (a). Here, as in *Chadbrooke Ins. Co.*, the information regarding the circumstances was limited to an unfiled pleading, which in this case alleged an incorrect residence for the defendant. The suit did not name the insured, Patricia Merritt, as a defendant, and she was unable to provide any information regarding the whereabouts of Cedrick Merritt. Counsel for Bhalock and Cross were repeatedly contacted by Peachtree regarding the residence of Cedrick Merritt, but counsel did not provide that information to Peachtree until after default judgment was taken in favor of their clients. Under these unusual circumstances, Peachtree did not have an opportunity to make a timely and adequate investigation of all the circumstances surrounding the underlying collision.

The trial court in its decision relies upon an alleged lack of prejudice to the insurer. But OCGA § 33-7-15 explicitly requires a showing of prejudice only with respect to the insured's failure to notify the insurer under subsection (b), not the inadequacy of notice from a third party under the exception created by subsection (c). It does not appear from the record before us that any party disputes that Peachtree was prejudiced by *Merritt's* failure to notify it of the accident and service of the lawsuit against him. Moreover, Peachtree obviously was prejudiced by its inability to discover that Cedrick Merritt had been served, thus triggering its obligation to defend the underlying action. The trial court erred in concluding that the requirements of OCGA § 33-7-15 (c) were met in this case.

*Judgment reversed. Barnes and Phipps, JJ., concur.*

DECIDED NOVEMBER 6, 2001.

*Gray, Rust, St. Amand, Moffett & Brieske, James T. Brieske*, for appellant.

*Paul D. Berke*, for appellees.