A01A2069. PONSE v. ATLANTA CASUALTY COMPANY.
(563 SE2d 499)

Barnes, Judge.

Ebodio Ponse brought suit against Atlanta Casualty Company alleging negligence, bad faith, and conscious indifference to consequences in failing to settle within policy limits and failing to defend in an action against him following an automobile accident. Ponse appeals from the trial court's denial of his motion for partial summary judgment and grant of summary judgment to Atlanta Casualty. Because we conclude that questions of fact exist on the issues in this case, we reverse.

The insurance policy here was first issued by Atlanta Casualty to Raymond Morales in 1991, listing Morales and his wife, Miriam Morales, as drivers. In 1993, the Moraleses added a 1987 Chevrolet Celebrity to the policy.

On September 5, 1994, while driving the Celebrity, Ponse, who is the Moraleses' son-in-law, was involved in an automobile accident with a car driven by Crystal Wilson. At the time of the accident, Ponse was driving under the influence of alcohol and without a license. Before filing suit against Ponse, Wilson's attorneys made two settlement demands upon Atlanta Casualty for the policy limits of $15,000, which were rejected by Atlanta Casualty. The day before filing suit, Wilson's counsel sent a copy of the suit to Atlanta Casualty. The cover letter informed Atlanta Casualty that the suit was being forwarded that day to the Gwinnett County State Court for filing. The suit was filed the next day, and Atlanta Casualty received its copy on January 25, 1996, the day after it was filed. Neither Ponse nor Atlanta Casualty filed an answer to the complaint. The trial court subsequently entered a default against Ponse in the amount of $163,554.45. Ponse sued Atlanta Casualty for failing to settle within policy limits and failing to defend him in the underlying action.

In addition to the facts cited above, the record shows that Ponse sought advice from a lawyer on February 1, 1996, and he brought with him the service copies of the pleadings with which he was

served. This attorney testified in his deposition that he telephoned Atlanta Casualty in Ponse's presence, and the insurer confirmed it was aware that the lawsuit had been filed. Ponse's attorney then confirmed this conversation by letter to Atlanta Casualty and stated in the letter that during the telephone conversation Atlanta Casualty had indicated it would defend the suit. Atlanta Casualty, however, denies receipt of this letter.

1. Questions of material fact exist on whether Atlanta Casualty's conduct waived any defenses it might have had. Without notice to anyone, Atlanta Casualty failed to provide a defense after it was notified of the pending suit and notified that Ponse had been served with process. Nothing in this record shows that Atlanta Casualty decided not to defend Ponse because of any misrepresentations before Atlanta Casualty allowed a default judgment to be taken against him. In fact, Atlanta Casualty admitted that it did not defend because of its contention that it did not know that Ponse had been served with process. Of course, this contention is contradicted by the deposition of Ponse's attorney and the letter he sent to Atlanta Casualty, confirming the conversation in which he informed the company that Ponse had been served and forwarding to it a copy of the summons and complaint served on him. This letter also states that Atlanta Casualty told the attorney that it would take care of the defense.

The letters from the original plaintiff's attorney and from Ponse's personal attorney were sufficient to raise an issue of fact on the issue of notice to Atlanta Casualty under OCGA § 33-7-15 (c). *Ga. Farm &c. Ins. Co. v. Martin*, 209 Ga. App. 237, 238 (1) (433 SE2d 315) (1993), rev'd on other grounds, 264 Ga. 347 (444 SE2d 739) (1994). Further, before it allowed the default judgment to be taken against Ponse, Atlanta Casualty paid for the property damage to the original plaintiff's automobile, paid the personal injury claims of her passenger, and negotiated with and made settlement offers to the original plaintiff. Later, Atlanta Casualty arguably was notified that suit was to be filed by the original plaintiff's attorney and was again notified by letter and by telephone by Ponse's personal attorney that the lawsuit had been filed and Ponse had been served. Nevertheless, Atlanta Casualty did not defend the action, or even advise Ponse that it would not defend him. Our law does not allow an insurance company to proceed in such a manner.

Atlanta Casualty cannot decide secretly not to defend Ponse, permit the action against him to go into default, and then let the plaintiff obtain a default judgment against him for over $160,000 without facing the consequences of its actions. While Atlanta Casualty had a right to investigate whether it had a duty to defend and provide coverage, it was obliged to inform Ponse *immediately* that it

intended to deny coverage if it learned of information indicating that no coverage existed under its policy. See *Edwards v. Fidelity &c. Co. of N.Y.*, 129 Ga. App. 306, 308 (2) (199 SE2d 570) (1973) ("[i]f . . . the insurer learned of facts which could constitute a policy breach and a defense, and immediately gave notice of its intent to avail itself of the defense, no waiver or estoppel could arise"); *Home Indem. Co. v. Godley*, 122 Ga. App. 356, 361 (1) (177 SE2d 105) (1970) ("the insurer is required to act seasonably in disclaiming liability and it could not delay its decision so long that the insured's rights were prejudiced thereby") (citation and punctuation omitted).

Thus, Atlanta Casualty's conduct may have waived any policy defense it might have asserted against Ponse.

> A waiver may be established even though the acts, conduct, or declarations are insufficient to establish an estoppel. Ordinarily, a waiver operates to preclude a subsequent assertion of the right waived *or any claim based thereon.* And once a right is waived the waiver cannot be withdrawn without the consent of the other party, even if subsequent events prove the right waived to have been more valuable than was anticipated. In certain situations, the question whether waiver will be found in any particular case depends not upon the secret intention of the party against whom it is asserted, but upon the effect which his conduct has had upon the other party, and if intention to waive is to be implied from conduct, the conduct should speak the intent clearly. A fine and often imperceptible line exists between an equitable estoppel and a waiver implied from conduct. And a showing of prejudice to the other party appears to be the central requirement of waiver implied from conduct. . . . It is also clear that regardless of [Atlanta Casualty's] actual intent to prejudice [Ponse's] legal position [that its] conduct in fact had that result. While normally the question of waiver is a matter for the jury, where, as here, the facts and circumstances essential to the waiver issue are clearly established waiver becomes a question of law.

(Citations and punctuation omitted; emphasis in original.) *Mauldin v. Weinstock*, 201 Ga. App. 514, 520 (4) (411 SE2d 370) (1991).

Because a question of fact exists over whether Atlanta Casualty's actions constituted a waiver, the fact that it might have had a policy defense does not alter that result. On the face of it, Atlanta Casualty's actions appear to have prejudiced Ponse's ability to defend himself. By not providing defense counsel after telling Ponse's personal attorney that it would, it could have deprived him of the oppor-

tunity of defending the case against him or settling the case before trial. Instead, Atlanta Casualty rejected settlement offers and, after suit was filed, allowed the case to proceed to a default judgment, without informing Ponse.

Additionally, under the evidence a question of fact also exists on whether by voluntarily assuming to provide a defense for Ponse, even if not obligated legally to do so, and then abandoning his defense, without notice to him, Atlanta Casualty is liable because it violated the principle of our law that "[w]here one undertakes an act which he has no duty to perform and another reasonably relies upon that undertaking, the act must generally be performed with ordinary or reasonable care. [Cit.]" *Stelts v. Epperson*, 201 Ga. App. 405, 407 (411 SE2d 281) (1991).

2. Regardless of whether Atlanta Casualty has not waived its policy defenses, this record does not support a finding that the Moraleses materially misrepresented facts in their policy affidavit, such as whether Ponse would be a regular driver of the automobiles they insured with Atlanta Casualty. The most that can be said from this record is that a question exists whether the Moraleses did not provide answers to questions that they may not have been asked.

Although "at summary judgment a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the non-moving party's case," *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991), here Atlanta Casualty has the burden of proving its defense and cannot merely rely upon the absence of evidence in the record disproving its defense. *Hess v. Textron Automotive Exteriors*, 245 Ga. App. 264, 266 (2) (536 SE2d 291) (2000). Atlanta Casualty has failed to carry its burden. This record does not show that the Moraleses misrepresented anything to Atlanta Casualty about whether Ponse would be a regular or primary driver of the Celebrity.

Further, it must be noted at the outset that Atlanta Casualty's policy does not require that all permissive users be listed in the policy and that under its terms, the policy covers anyone driving the car with the Moraleses' permission. Consequently, Ponse was not excluded as a permissive driver just because he was not listed on the policy.

The affidavit and deposition of the insurance agent who processed the Moraleses' request to add the Celebrity to their policy are not sufficient to establish that they "did not reveal" that Ponse would be a regular driver of the car or that she "inquired" whether anyone else would be driving the Celebrity. The actual affidavit and deposition testimony are not so emphatic. The agent could not testify that she asked whether anyone other than the Moraleses would be driving the car; she merely recounted what she usually did. In fact,

she had no specific recollection of her conversations with the Moraleses, and no document in her records or in Atlanta Casualty's records shows that the Moraleses were asked and misrepresented who would be driving their cars. Further, Atlanta Casualty cannot rely on admissions by the Moraleses because their depositions apparently were not taken as they are not included in the record.

Without evidence that the Moraleses lied in response to a question about regular drivers of their automobile, no factual or legal basis exists for Atlanta Casualty's position. Ponse testified that he did not own the Celebrity, and while he may have used the Celebrity the most, he drove all of the Moraleses' cars. He also testified that he helped Morales pay for the car because Morales allowed Ponse to use it. Under this testimony, a question of fact exists whether Ponse was more than a permissive driver of the car. Further, no authority in this State requires an insured to inform an insurance company of all the permissive drivers of their vehicles.

3. Although Ponse also contends the trial court erred by denying his motions for partial summary judgment on Atlanta Casualty's defense of lack of cooperation, we find a genuine issue of material fact remains. Atlanta Casualty's denial of receipt of the letter forwarding the summons and complaint is sufficient to require that this defense be presented to a jury. In the same manner, we also find issues of material fact exist on Ponse's claims for bad faith penalties and punitive damages. Even though Atlanta Casualty's actions appear to have resulted in a default judgment being entered against Ponse, this does not mean that, as a matter of law, Atlanta Casualty acted in bad faith or that OCGA § 51-12-5.1 would authorize an award of punitive damages. Therefore, the trial court did not err by denying his motion for partial summary judgment.

Accordingly, the grant of summary judgment to Atlanta Casualty is reversed, but the denial of partial summary judgment to Ponse is affirmed.

*Judgment affirmed in part and reversed in part. Blackburn, C. J., Pope, P. J., Miller and Mikell, JJ., concur. Smith, P. J., and Phipps, J., concur specially.*

SMITH, Presiding Judge, concurring specially.

In this case, serious questions exist with regard to the conduct of both parties. It appears to me that neither Ponse nor Atlanta Casualty Company, nor even the Moraleses, behaved responsibly or in a manner consistent with applicable law. It remains for a jury to sort out blame. Because I agree with the majority that some questions of fact exist that preclude the grant of summary judgment to Atlanta Casualty, I concur in the judgment. I write specially because I cannot agree with all that is said in the majority opinion.

I believe, for example, that a question of fact exists with regard to the crucial issue of whether Ponse's attorney informed the insurer that Ponse had been served with Wilson's suit and whether the insurer informed Ponse's attorney it would defend the suit. Ponse's attorney testified on his deposition that he telephoned Atlanta Casualty in Ponse's presence and the insurer confirmed it was aware that the lawsuit had been filed. Although Ponse's attorney testified he confirmed this conversation by letter to Atlanta Casualty and stated in the letter that during the telephone conversation Atlanta Casualty had indicated it would defend the suit, he was less than certain on his deposition that this had actually been conveyed to him. Atlanta Casualty's Claims Manager stated in her affidavit that neither Ponse nor Morales ever contacted the company regarding the suit. If a jury decides that Ponse did not actually inform Atlanta Casualty that he had been served, then the only notice it received, given by Wilson's attorneys, informed the insurer only that suit *would* be filed, not that it had been filed and that Ponse had been served. Although from this information Atlanta Casualty must have had a fairly good idea that a permissive driver of its insured was very likely to be served, I cannot agree with the majority that this constituted the actual notice required to trigger the duty to defend Ponse.

Further, I cannot agree with the majority that the record does not show a material misrepresentation by the Moraleses. At best, a question of fact exists whether the Moraleses made two such material misrepresentations that would void the policy. First, in my view, they misrepresented the fact that Ponse was at least a part owner of the vehicle. In December 1993, after Ponse married the Moraleses' daughter Roxana and the Ponses came to live next door to the Moraleses, Ponse and Raymond Morales visited the car dealer from whom Morales had previously purchased several vehicles. Ponse had never had a driver's license, although he had been driving for over five years and had previously been charged with DUI and driving without a license. The testimony of the proprietor of the car lot establishes that the proprietor refused to sell the car in issue to Ponse because Ponse was not a licensed driver and was under age 21 and that Morales then bought the Celebrity *for Ponse's use*. Thereafter, Ponse was the primary user of the Celebrity. He often kept the keys in his half of the duplex, drove the car to and from work, and used it for personal errands. He always had the right to use the car; all he needed to do was get the keys. It was not necessary for him to get permission from Morales. Ponse also helped pay for gas and insurance, and he sometimes paid a portion of the monthly payment for the car and for repairs. Morales was aware that Ponse was not licensed to drive because Ponse told him.

Second, the Moraleses also failed to disclose that Ponse would be

the primary driver of the car. When Miriam Morales came to the Oxford Insurance Agency office on December 20, 1993, to add the new car to the insurance policy, she spoke with Monica Quattlebaum. Quattlebaum asked if any other changes should be made, such as adding drivers, and she inquired whether any drivers other than Raymond and Miriam Morales were in their home and whether anyone else would be driving the Celebrity. The Moraleses did not reveal that Ponse would be driving the Celebrity regularly. Notwithstanding arguments that every permissive driver need not be listed, it is clear from the circumstances surrounding the purchase of the Celebrity, as well as from the depositions of Ebodio Ponse and Roxana Morales Ponse, that Ebodio Ponse was, in fact, the primary driver of the Celebrity. At each policy renewal, the Moraleses affirmed that the conditions existing when the policy was first issued were still true, including that Raymond and Miriam Morales were the only drivers of the insured vehicles. The premiums and the acceptance of the risk were based upon this information.

In my view, these representations were false and material; they changed the nature, extent, or character of the risk. Even when an applicant acts in good faith, not knowing that a representation is untrue, such misrepresentations void a policy. *Bourne v. Balboa Ins. Co.*, 144 Ga. App. 55, 56 (240 SE2d 261) (1977).[1] Here, it is undisputed that had the Moraleses informed Atlanta Casualty that Ponse was driving the Celebrity, the insurer would not have issued the policy. David Boyd, Atlanta Casualty's Manager of Policyholder Services, stated in his affidavit that Atlanta Casualty did not issue policies of insurance to any person who would make the car available to users not holding a valid driver's license, and that Morales's failure to inform Atlanta Casualty that Ponse was driving the car "substantially increased Atlanta Casualty Company's risk and exposure." Boyd stated that an unlicensed driver with Ponse's history of moving violations and alcohol violations would be "an uninsurable risk." In fact, the policy itself states that any "omissions, concealment of facts or incorrect statements contained in the application" or in a notification of change "that are fraudulent or materially affect the acceptance or rating of this risk by us, shall prevent recovery under this policy."

It is clear to me that Atlanta Casualty had sufficient grounds to contest the claim. But it maintains that it did not know until the present action was filed and the depositions of the Ponses were taken that those grounds existed. If that is true, I can see no reason for its

---

[1] *Bourne* is physical precedent only but has been cited without reservation. See, e.g., *Miller v. Nationwide Ins. Co.*, 202 Ga. App. 737 (415 SE2d 700) (1992).

failure to defend Ponse unless it did not have proper notice that he had been served. Because a jury must decide that question, I agree that summary judgment in favor of either party was not appropriate.

I am authorized to state that Judge Phipps joins in this special concurrence.

DECIDED MARCH 29, 2002 —

*Robert H. Benfield, Jr.*, for appellant.

*Seacrest, Karesh, Tate & Bicknese, Karsten Bicknese, Daniel S. Wright*, for appellee.